Lee Roy BREWER, Appellant,

v.

COMMONWEALTH OF KENTUCKY,
Appellee.

Nos. 2004–SC–000742–MR,
2004–SC–001105–TG.

Supreme Court of Kentucky.

Nov. 22, 2006.

alleging that: (1) the trial court erroneously ordered forfeiture of firearms that belonged to the Appellant; (2) his due process rights were violated when the Commonwealth urged the jury in the sentencing phase to impose a harsh sentence for the sake of the community; and (3) the prosecutor improperly used "investigative hearsay" to prove Appellant's alleged involvement in the marijuana trafficking operation. We affirm Appellant's conviction and sentence but reverse the improper forfeiture of his firearms.

Karen Shuff Maurer, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Kenneth W. Riggs, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, Counsel for Appellee.

## MEMORANDUM OPINION OF THE COURT

Appellant, Lee Roy Brewer, was convicted by the Owen Circuit Court of one count of engaging in organized crime, Kentucky Revised Statutes (KRS) 506.120; four counts of trafficking in five or more pounds of marijuana, KRS 218A.1421(4); and four counts of trafficking in eight or more ounces but less than five pounds of marijuana, KRS 218A.1421(3).[1] Appellant was sentenced to a total term of imprisonment of sixty years and now appeals his conviction and sentence as a matter of right pursuant to Ky. Const. § 110(2)(b),

## I. FACTS.

On April 24, 2004, acting on information received during an unrelated situation, the police visited the home of Scott and Beverly Sizemore. The police immediately recognized the strong odor of marijuana emanating from within the Sizemores' home. Despite this, Scott Sizemore invited the police inside where, after obtaining his consent to search, they discovered several bags of marijuana. Sizemore also told the police that Appellant, Appellant's wife (Rosalee),[2] Jacqueline Sims, and Dale Masden were involved in a scheme to smuggle marijuana from Mexico. Sizemore also informed the police that Masden might have recently returned home from Mexico with a large shipment of marijuana.

When police later arrived at Masden's home, Sims, who was dating Masden, allowed them inside and gave them permission to search the residence. That search yielded several bags of marijuana and numerous marijuana plants. Sims cooperated with the police and told them that she

---

1. The original indictment also contained firearms enhancement charges, which were later dropped by the Commonwealth, as well as one count for cultivation of marijuana, for which Appellant was acquitted.

2. Rosalee is also referred to as Rosa Lee at various places in the record.

and Masden kept quantities of marijuana for Appellant, who distributed and sold it.

Sims also agreed to wear a wire during a visit to Appellant's home. On April 25, 2004, Sims went to Appellant's home and disclosed that Beverly and Scott Sizemore had been arrested. Appellant and Rosalee suggested that Sims should get rid of the marijuana she had in her home. Sims did not disclose that police had already confiscated the marijuana in her home but did tell them the police had confiscated the plants and her own personal supply of marijuana. Appellant then gave Sims an ammunition box in which to bury the marijuana.

The police then arrested Appellant and his wife, Rosalee. After obtaining a search warrant for the Brewers' property and conducting an initial search, police found no marijuana or any evidence of alleged drug trafficking; although the police did seize Appellant's firearms. However, a subsequent search of Appellant's property (and the area adjacent thereto) yielded $8,100 in cash, as well as some marijuana.

Scott Sizemore; Sims; Masden; and another suspect, Deborah Gibbs, all entered into plea agreements whereby they agreed to testify against Appellant and Rosalee. That testimony revealed an elaborate marijuana trafficking operation in which Masden drove to Texas to meet Gibbs and another person identified as "Terry," whereupon they would drive to Mexico to pick up the load of marijuana. The marijuana would then be placed in the gas tank of an Oldsmobile that had been modified so that the tank would hold at least four gallons of gas but keep the marijuana protected. Once the tank was filled with fifty to sixty pounds of marijuana, Gibbs would then drive through a Mexican checkpoint, with the assistance of a member of the Mexican Army. Eventually, Gibbs or Masden would then drive to Monterey, Kentucky, where the marijuana would be removed, weighed, and stored in a freezer in Masden's trailer.

According to testimony, the financiers of the operation were Appellant and Rosalee. Masden, who did not directly sell the marijuana, would receive a flat $5,000 fee from Appellant for bringing the marijuana from Mexico to Owen County, Kentucky. Although Appellant and Rosalee did not directly sell the marijuana either, they apparently acted as wholesalers who "fronted" the marijuana to street-level dealers on credit. According to Sizemore, he and Beverly made about $200–$400 per pound of marijuana they sold for Appellant, with most of those sales occurring at their residence.

Appellant eventually was convicted of one count of engaging in organized crime, four counts of trafficking in marijuana (five or more pounds), and four counts of trafficking in marijuana (over eight ounces) and was sentenced to serve sixty years in prison. He now appeals his conviction and sentence, as well as the trial court's order of forfeiture.[3]

## II. ANALYSIS.

### A. Forfeiture of Appellant's firearms.

In his first assignment of error, Appellant alleges that the trial court's order of forfeiture of firearms seized from his home was improper and requires reversal. We agree.

---

**3.** The forfeiture issue was the subject of a separate appeal (2004–SC–001105–TG), which was transferred to this Court from the Court of Appeals. We have elected to resolve both appeals in this combined opinion.

During the initial search of Appellant's home, no evidence of marijuana trafficking was found; however, the police seized numerous firearms. The Commonwealth subsequently filed a notice of forfeiture stating that it intended to bring a forfeiture action against certain real and personal property belonging to Appellant. In response, Appellant sought to have the previously seized firearms returned to family members. The Commonwealth filed a response indicating that it intended to seek forfeiture of the firearms, pursuant to KRS 218A.410(1)(f), (h), and (j).

On September 28, 2004, the trial court held an ancillary hearing on the forfeiture issue, pursuant to KRS 218A.460, following Appellant's conviction. Detective Derek Boyd testified on behalf of the Commonwealth that in his "experience as a narcotics officer ... guns are often found and accompany ... drug trafficking." However, Boyd also testified that there was no evidence linking any of the firearms found at Appellant's home to narcotics.

Although the Commonwealth sought forfeiture of Appellant's firearms, pursuant to KRS 218A.410(1)(f), (h), and (j), we note the only portion of that statute to be applicable to firearms, *i.e.*, equipment or personal property, are subsections (f) and (j). These subsections provide, in pertinent part, that the following are subject to forfeiture:

(f) All ... *equipment of any kind* which [is] used, or intended for use, in manufacturing, compounding, processing, delivering, importing, or exporting any controlled substance in violation of this chapter.

....

(j) Everything of value furnished, or intended to be furnished, in exchange for a controlled substance in violation of this chapter, all proceeds, including ... personal property, *traceable to the exchange* .... It shall be a *rebuttable presumption* that all moneys, coin, and currency found in close proximity to controlled substances, to drug manufacturing or distributing paraphernalia, or to records of the importation, manufacture, or distribution of controlled substances, are presumed to be forfeitable under this paragraph. *The burden of proof shall be upon claimants of personal property to rebut this presumption by clear and convincing evidence ....*

(Emphasis added).

Although this Court has addressed the issue of forfeiture of currency in the context of drug trafficking in *Osborne v. Commonwealth,*[4] we have not yet addressed the forfeiture provisions of KRS 218A.410 as they apply to firearms. We note that while firearms are not specifically mentioned in the statute, they are "personal property" and, thus, are subject to forfeiture. Moreover, the statute provides that personal property is merely *subject to* forfeiture, meaning that the Commonwealth's argument in favor of automatic forfeiture cannot be correct, especially in light of the fact that citizens have a constitutional right to bear arms and a right to due process of law.[5]

Having rejected the Commonwealth's mandatory forfeiture argument, we now turn to Appellant's argument that the trial court erred by forfeiting his firearms without requiring the Commonwealth to link those firearms to narcotics trafficking. The Commonwealth, unsurprisingly, contends that no such linkage or nexus is required.

4. 839 S.W.2d 281 (Ky.1992).

5. Ky. Const. §§ 1(7), 11; U.S. Const. amend. II, V, and XIV.

In support of its contention that no such nexus is required, the Commonwealth relies upon KRS 218A.460(4), which provides, in pertinent part, that "[u]nless otherwise expressly provided in KRS 218A.410, the burden shall be upon claimant to property to prove by [a] preponderance of the evidence that it is not subject to forfeiture." Essentially, the Commonwealth would have this Court approve a method by which a defendant who legally owns firearms and who is convicted of violating one of the provisions of KRS 218A must forfeit those firearms without any evidence linking the firearms to the KRS 218A offense. This is an untenable proposition and is unsupported by the requirement under KRS 218A.410(1)(j) that the property subject to forfeiture must be "traceable to the [narcotics] exchange[.]" As we succinctly stated in *Osborne*, "it is apparent that *any property* subject to forfeiture under [KRS 218A.410](j) *must be traceable to the exchange or intended violation.*" [6]

■ Despite the Commonwealth's arguments to the contrary, we find the language and rationale of *Osborne* applicable to the forfeiture of firearms. Were we to accept the Commonwealth's argument that no nexus is required between the firearms and the drug trafficking, then "the statute would mandate forfeiture of property which was without any relationship to the criminal act and would be of dubious constitutional validity under Sections 2, 11, 13, 26 and possibly other sections of the Constitution of Kentucky." [7] Thus, we expressly hold that when it seeks to forfeit firearms allegedly used in furtherance of a violation of KRS Chapter 218A, the Commonwealth bears the initial burden of producing some evidence, however slight, to link the firearms it seeks to forfeit to the alleged violations of KRS 218A. The burden only shifts to the opponent of the forfeiture if the Commonwealth meets its initial tracing burden.

■ From the foregoing, it is clear that the Commonwealth failed to meet its initial burden of showing that the firearms in this case were traceable to Appellant's drug trafficking scheme. Although ample testimony disclosed a five-year scheme of drug trafficking involving various personnel and tactics, there was absolutely no evidence that any of Appellant's firearms were acquired with the proceeds of drug sales, in exchange for drugs, or were used in any way to facilitate the trafficking of marijuana.

Thus, although resolution of this issue does not affect Appellant's underlying conviction and sentence, we find that the forfeiture of his firearms was erroneous and, consequently, remand the issue to the trial court for entry of an order consistent with this opinion.

**B. Prosecutor's Improper Remarks During Closing Argument at Penalty Phase.**

Appellant next alleges the Commonwealth's closing argument during the penalty phase incited the jury by appealing to their civic responsibility to impose an unduly harsh sentence on him, denying him due process of law. Although we do not condone the portion of the Commonwealth's argument challenged by Appellant, we do not believe that the argument was so improper as to require reversal.

**1. Standard of Review.**

■ Appellant concedes that this issue is unpreserved for appellate review

---

6. *Osborne,* 839 S.W.2d at 284 (emphasis added).

7. *Id.*

by contemporaneous objection. So our review is governed by the palpable error standard found at Kentucky Rules of Criminal Procedure (RCr) 10.26. For an error to be palpable, it must be "easily perceptible, plain, obvious and readily noticeable."[8] A palpable error "must involve prejudice more egregious than that occurring in reversible error[.]"[9] A palpable error must be so grave in nature that if it were uncorrected, it would seriously affect the fairness of the proceedings.[10] Thus, what a palpable error analysis "boils down to" is whether the reviewing court believes there is a "substantial possibility" that the result in the case would have been different without the error.[11] If not, the error cannot be palpable. Finally, when reviewing claims of prosecutorial misconduct, we must focus on the overall fairness of the trial and may reverse only if the prosecutorial misconduct was so improper, prejudicial, and egregious as to have undermined the overall fairness of the proceedings.[12]

### 2. "Send a Message" Statements.

According to Appellant, the following portion of the Commonwealth's closing argument during the penalty phase was so improper as to rise to the level of palpable error:

> Whenever I am trying to do this job, I am trying my best to send that signal out there to people about what's going to happen to them, if they commit these types of crimes. I want the person who's involved to understand the way the community feels about this type of conduct. So, your sentence here tonight is going to send a message. It's going to send a message to Lee Roy Brewer; it's going to send a message to Rosa Lee Brewer, to Linda Chadwell, to Beverly Sizemore, to Richard Swan. It's also going to send a message to other people that want to be involved in this, and you heard the list and we've got one. And, they're going to hear about the way an Owen County jury views all of this, and so that's important. The community's going to know about it. They're going to know whether or not we have the backbone to stand up to it. And, so there is a message with your sentence and you've got to consider that.
>
> . . . . .
>
> Now, there's a second reason for that sentence. It's the last thing I had on my diagram, that is the protection of the community and the way to get that protection, these people, even if you give them eighty years are going to be eligible for parole in eight years. And, I'm not going to stand up here and debate whether they make it or they don't make it. I suggest to you that if they do what they're supposed to do and live by the rules, they've got as good a chance as anybody else in that prison to get out when they reach the parole eligibility level at eight years. If they get out and they've got seventy-two years hanging

**8.** *Burns v. Level*, 957 S.W.2d 218, 222 (Ky. 1997) (citing BLACK's LAW DICTIONARY (6th ed.1995)).

**9.** *Ernst v. Commonwealth*, 160 S.W.3d 744, 758 (Ky.2005).

**10.** *Id.*

**11.** *Schoenbachler v. Commonwealth*, 95 S.W.3d 830, 836 (Ky.2003) (quoting *Aberna-*

*thy v. Commonwealth*, 439 S.W.2d 949, 952 (Ky.1969)).

**12.** *Soto v. Commonwealth*, 139 S.W.3d 827, 873 (Ky.2004) ("'[a]ny consideration on appeal of alleged prosecutorial misconduct must center on the overall fairness of the trial. In order to justify reversal, the misconduct of the prosecutor must be so serious as to render the entire trial fundamentally unfair.'").

over their heads, I don't think any supervising officer will have very much trouble keeping them in line. And, I don't think we'll have to worry about the trafficking starting up again. So, that's what I'm talking about when I say a big stick and to protect the community, we've got a hammer over their heads.

■■■ It is unquestionably the rule in Kentucky that counsel has wide latitude while making opening or closing statements.[13] And it is equally well-established that a prosecutor may use his closing argument to attempt to "persuade the jurors the matter should not be dealt with lightly."[14] So the Commonwealth's exhortation to the jury to recommend that Appellant be sentenced to the maximum allowable sentence is neither surprising nor improper.[15] But what is troubling is the "send a message" portion of the Commonwealth's argument. Although we disapprove of the comments in question, we find them to be virtually indistinguishable from those we recently found to not constitute palpable error in *Commonwealth v. Mitchell.*[16]

In *Mitchell*, the Commonwealth stated during closing argument in a narcotics trafficking trial that "if we are ever to make a dent in a terrible drug problem we've got, prescription drugs with Oxycontin, it's time to send a message to this defendant and to this community that we're going to punish drug dealers for

doing what they're doing. It's time we send a message."[17] We noted that counsel is permitted "wide latitude during closing arguments" and ultimately held that the "send a message" argument was, at most, harmless error because it was merely "responsive commentary to defense counsel's closing argument[,]" meaning that the comments "neither prejudiced Mitchell's right to a fair trial, nor unduly pressured the jury to punish her."[18] Similarly, we held in *Young v. Commonwealth* that a prosecutor's appeal during closing for the jury to " 'set a community standard,' 'to send a message throughout this community [that if] you start manufacturing methamphetamine in Muhlenberg County ... you're gonna receive the maximum punishment that we can give you,' and '[t]o send a message to these people to discontinue this type of activity[ ]' " did not constitute palpable error.[19]

Appellant's counsel asked for mercy and leniency in his closing argument based at least, in part, on Appellant's age, poor health, and lack of previous felony convictions. Thus, the Commonwealth had the right to respond by pointing out why it believed Appellant's crimes were serious enough to warrant a high degree of punishment.[20] Furthermore, error cannot be presumed simply from the fact that the jury recommended severe punishment for Appellant in light of the overwhelming evi-

---

**13.** *See, e.g., Wheeler v. Commonwealth,* 121 S.W.3d 173, 180 (Ky.2003).

**14.** *Harness v. Commonwealth,* 475 S.W.2d 485, 490 (Ky.1971).

**15.** *See e.g., Hamilton v. Commonwealth,* 401 S.W.2d 80, 88 (Ky.1966) (permitting Commonwealth to recommend level of punishment to jury); *Soto,* 139 S.W.3d at 874 (same).

**16.** 165 S.W.3d 129 (Ky.2005)

**17.** *Id.* at 131.

**18.** *Id.* at 132–133.

**19.** 25 S.W.3d 66, 73 (Ky.2000).

**20.** *See, e.g., id.* at 75 (noting that Commonwealth's "send a message" argument was not palpable error because, among other things, it was a response to defense counsel's plea for leniency due to the defendant's lack of prior convictions for selling narcotics).

dence produced by the Commonwealth showing the extensive nature of Appellant's drug trafficking enterprise.[21] In fact, the jury could not have been completely antagonized toward Appellant by the Commonwealth's improper "send a message" argument because it recommended that his four convictions for trafficking in eight or more ounces, but less than five pounds, of marijuana be served concurrently with his other offenses.

Lest this opinion be misconstrued, we do find that the Commonwealth's exhortation to this jury to "send a message" to the community was improper. We strongly urge the prosecutors throughout the Commonwealth to use extreme caution in making similar arguments. Indeed, had a timely objection been made, we may have found the Commonwealth's comments to constitute reversible error. But, as in *Mitchell* and *Young*, upon a consideration of the overall trial and the context in which the comments in question were made, we do not find that there is a substantial possibility that the Commonwealth's argument seriously affected the overall fairness of the proceedings. Thus, we decline to find that the Commonwealth's comments rise to the level of palpable error.

### C. Commonwealth's Alleged Use of "Investigative Hearsay."

In his final assignment of error, Appellant alleges the Commonwealth's Attorney improperly presented "investigative hearsay" by allowing several police officers to testify as to what they were told by various other codefendants and suspects. Appellant timely objected to each alleged

hearsay statement; but the trial court overruled each objection, declaring that each statement "would be permissible for purposes of showing why he took the next action." During one officer's testimony, the trial court overruled the objection but admonished the jury not to consider the statements as factual statements but, rather, to show why the officer did what he did.

We have addressed the issue of investigative hearsay in a number of previous cases. Most significantly, in *Sanborn v. Commonwealth*,[22] we held that "hearsay is no less hearsay because a police officer supplies the evidence.... [T]here is no separate rule, as such, which is an investigative hearsay exception to the hearsay rule." There, we also distinguished so-called "investigative hearsay" from the verbal act doctrine by holding that "[a]n extrajudicial statement has a proper non-hearsay use when its utterance (not its substance) is a part of the issues of the case."[23]

In this instance, however, the more appropriate rule by which such statements would be rendered admissible is the verbal act doctrine, which provides that the statements are not hearsay evidence because they are "not admitted for the purpose of proving the truth of what was said, but for the purpose of describing the relevant details of what took place."[24] Importantly, however, the "relevancy [of such statements] does not turn on whether the information asserted tends to prove or disprove an issue in controversy, but on

---

21. *Id.* ("[w]hile the jury did recommend the maximum sentence of twenty (20) years, the Commonwealth introduced overwhelming evidence that Young manufactured methamphetamine on a relatively large scale.")

22. 754 S.W.2d 534, 541 (Ky.1988) (plurality opinion).

23. *Id.* (quoting LAWSON, KENTUCKY EVIDENCE LAW HANDBOOK § 8.00 (2d ed.1984)).

24. *Preston v. Commonwealth*, 406 S.W.2d 398, 401 (Ky.1966).

**352**

whether the action taken by the police officer in response to the information that was furnished is an issue in controversy.... The rule is that a police officer may testify about information furnished to him only where it tends to explain the action that was taken by the police officer as a result of this information *and* the taking of that action is an issue in the case." [25]

 In the case at bar, the officers' actions were never at issue. No question was ever raised as to the propriety of the steps taken by the police, which eventually culminated in a search of Appellant's residence and property. As such, the admission of those hearsay statements was in error. However, we hold that the error was harmless under RCr 9.24 because the improper testimony was cumulative due to the fact that the sources of the alleged hearsay statements, Sizemore and Masden, both testified and were subject to thorough cross-examination. Furthermore, the evidence adduced by the Commonwealth as to Appellant's guilt was overwhelming. Thus, though we reiterate our condemnation of investigative hearsay, the introduction of such evidence in this case was harmless error.

### III. CONCLUSION.

For the reasons set forth herein, we affirm Appellant's conviction and sentence but reverse the trial court's order of forfeiture of Appellant's firearms and remand that issue for further proceedings consistent with this opinion.

LAMBERT, C.J.; GRAVES, McANULTY, MINTON, ROACH, and SCOTT, JJ., concur.

WINTERSHEIMER, J., concurs as to the conviction and sentence but dissents as to the forfeiture.

---

**25.** *Sanborn,* 754 S.W.2d at 541. *See also Young v. Commonwealth,* 50 S.W.3d 148, 167 (Ky.2001); *Gordon v. Commonwealth,* 916 S.W.2d 176, 178–179 (Ky.1995).