Jeffrey KING, Appellant

v.

COMMONWEALTH of Kentucky, Appellee

NO. 2013-CA-001840-MR

Court of Appeals of Kentucky.

RENDERED: JULY 2, 2015; 10:00 A.M.

---

**40**

BRIEFS FOR APPELLANT: Jason A. Hart, Assistant Public Advocate, Frankfort, Kentucky

BRIEF FOR APPELLEE: Jack Conway, Attorney General of Kentucky, Taylor Payne, Assistant Attorney General, Frankfort, Kentucky

BEFORE: J. LAMBERT, STUMBO, AND TAYLOR, JUDGES.

*OPINION*

LAMBERT, J., JUDGE:

Jeffrey King appeals from a Madison Circuit Court judgment and sentence entered after a jury found him guilty of first-degree trafficking in a controlled substance, first offense. We affirm.

On June 3, 2011, King drove his Jeep to the Cottage Hearth Inn. His passenger, Sean Adams, left the Jeep and entered the Inn. After a short time, Adams came out and got back into the Jeep. King pulled away from the Inn, closely followed by a green minivan, driven by an unknown white male. King parked at his residence and entered his apartment, followed by the driver of the minivan. Adams remained in the Jeep. The driver of the minivan left the apartment a short time later, followed by King. The driver of the minivan drove away. King got into his Jeep and also drove away.

Detective Johnson had followed King from the Inn and conducted a traffic stop when he saw that King was not wearing his seat belt. He arrested King after discovering he had an outstanding warrant for failure to pay a fine. King gave consent to search the vehicle. Detective Johnson directed Adams to exit from the passenger side of the vehicle. Detective Johnson and another detective searched the vehicle and found a piece of plastic containing two 30–milligram Percocet tablets between the console and the passenger seat. The detectives also found approximately thirty-two 30–milligram Percocet tablets in a wet paper towel in the center console cup holder nearest to the passenger side of the vehicle. King and Adams were each charged with first-degree trafficking in a controlled substance, first offense. They were tried together. Both were found guilty and received sentences

of eight years. This appeal by King followed.[1]

■ King argues that he was denied the right to a unanimous verdict. When the trial court polled the jury after it returned a verdict convicting King of trafficking in the first degree, one juror replied "no" when she was asked whether the verdict of guilty was her verdict. Upon questioning by the trial court, she stated, "I wasn't decisive. And I think that Jeffrey King was probably facilitation." A facilitation instruction had been given to the jury.

The trial court stated that the verdict was not unanimous, and that the jury would be sent back to continue deliberations to see if the juror could be decisive one way or the other. Adams's counsel said he had not heard the juror's remarks. The trial court said, "She said that she wasn't decisive. I think that is what she said. Is that what you said?" The juror replied, "Yes." The trial court then verified that the juror was uncertain only as to the verdict against King, not the verdict against his co-defendant, Adams.

The trial court then sent the jury to deliberate further, after instructing them according to Kentucky Rules of Criminal Procedure (RCr) 9.57(1), which is the charge given to a jury that is unable to reach a verdict. When the jury returned a short time later, the juror had changed her vote to agree that King was guilty of first-degree trafficking.

King argues that the RCr 9.57(1) instruction was improper because the jury had not indicated that it was deadlocked or "hung." He contends that the juror unequivocally stated that it was not her verdict, which indicated that there was not a unanimous verdict and should have led to

the declaration of a mistrial. Our review of the record indicates that the juror in question stated that she was not decisive, and that "Jeffrey King was probably facilitation." Her statement was ambiguous at best, and the trial court did not err by providing the RCr 9.57 instruction. In any event, even if she had unequivocally stated that it was not her verdict, the trial court followed the proper statutory procedure by sending the jury away for further deliberation.

Kentucky Revised Statutes (KRS) 29A.320(3) provides the following procedure for rendering the verdict:

(d) When the verdict is announced either party may require that the jury be polled, which is done by the judge asking each juror if it is his verdict.

(e) If more than the number of jurors required by KRS 29A.280, as appropriate to the type of case being tried, answers in the negative, the jury must be sent out for further deliberation.

In *Hart v. Commonwealth*, 768 S.W.2d 552 (Ky.App.1989), the initial polling of the jury revealed that one juror was ambiguous in her position. The trial court sent the jury to deliberate further and accepted the jury's subsequent unanimous guilty verdict. A panel of this Court affirmed the judgment, stating as follows:

Under KRS 29A.320(3)(e), the trial court clearly was authorized to send the jury back for further deliberations after the initial jury poll revealed the fifth juror's ambiguous opinion and the second poll of the entire jury revealed no lack of unanimity. To establish an absence of unanimity, upon being polled, a juror must connote that the verdict was given involuntarily or was forced upon him or

---

1. The same panel of this Court has also considered the appeal of Adams's conviction in

Appeal No. 2013–CA–001864–MR.

against his will. *Fleming v. Commonwealth*, Ky., 419 S.W.2d 754 (1967). None of the jurors indicated any coercion and the trial court clearly had no duty to interrogate the fifth juror at length simply because she previously had expressed some misgivings or misunderstanding as to the initial guilty verdict.

*Hart,* 768 S.W.2d at 555.

There is absolutely no evidence in the record that the initial verdict in King's case was given involuntarily or that the indecisive juror had been coerced in any way. The trial court acted in compliance with KRS 29A.320(3)(e) when it sent the jury back for further deliberations.

■ Next, King argues that the trial court erred in refusing to strike for cause a juror who was a uniformed police officer. Although King's attorney objected to the inclusion of the uniformed officer on the jury and used one of his peremptory strikes to exclude him, he failed to preserve the issue adequately because he did not identify which juror he would have stricken with his remaining peremptory challenge if the trooper had been stricken for cause. "[I]n order to complain on appeal that he was denied a peremptory challenge by a trial judge's erroneous failure to grant a for-cause strike, the defendant must identify on his strike sheet any additional jurors he would have struck." *Gabbard v. Commonwealth,* 297 S.W.3d 844, 854 (Ky.2009). King asks us to review this issue for palpable error.

In *McDaniel v. Commonwealth,* 415 S.W.3d 643 (Ky.2013), the appellant asked for palpable error review of the trial court's alleged error in failing to strike three prospective jurors for cause. The appellant asserted that this error forced him to expend three peremptory strikes, thereby violating his right to be tried by a fair and impartial jury.

In addressing his argument, the Supreme Court of Kentucky emphasized that "[W]hat a palpable error analysis 'boils down to' is whether the reviewing court believes there is a 'substantial possibility' that the result in the case would have been different without the error." *Id.* at 649 (quoting *Brewer v. Commonwealth,* 206 S.W.3d 343, 349 (Ky.2006) (citations omitted)). In light of this standard, the Court held that an examination of the alleged biases of the prospective jurors was unnecessary, because each juror was eventually peremptorily struck by the appellant and therefore, there was not a " 'substantial possibility' that these particular jurors' alleged biases affected the result in the case as is required for a finding of palpable error." *Id.* (citation omitted). "If Appellant does not both exhaust his peremptory strikes and assert that he would have used one of his forfeited peremptory strikes on another prospective juror who actually sat on the jury, there can be no reversible error because the Appellant received the jury he wanted, and any error [was] effectively cured." *Id.* (internal citations and quotation marks omitted.)

■ The same reasoning is applicable in King's case. Because the juror to whom he objected did not sit on the jury, he presumably received the jury he wanted because he did not identify a juror against whom he would have used his forfeited peremptory strike; consequently, there is no basis for a finding of palpable error.

■ Next, King argues that the trial court erred in allowing the uniformed trooper to remain in the jury venire during voir dire. According to King, the Commonwealth's attorney treated the trooper as a witness and used his relationship to the prosecutorial system to elicit biased, incomplete, and incorrect statements of the law that tainted the jury pool. Al-

though King objected to the trooper's inclusion in the jury pool, he made no specific objection to the prosecutor's voir dire questioning, and the issue is therefore unpreserved.

■ During voir dire, the following exchange took place between the Commonwealth's attorney and the uniformed police officer:

> Commonwealth's attorney: Trooper Short, I will pick on you. Do you have an opinion on what "possession" would be? If I am holding these keys, how many of you all think I would be in possession of these keys?
>
> All right, you are right, Kentucky law says that if you have got the keys in my physical proximity and I know what they are then I am in possession of the keys.
>
> Now there is another facet of Kentucky law and that is what is generally referred to as "constructive possession." And that means that you exercise "dominion and control" over something. [He then set the keys down.]
>
> Do you think I possess those keys right now, Trooper Short?
>
> Trooper Short: Yes, you do.
>
> Commonwealth's attorney: Why do you think that?
>
> Trooper Short: Close proximity to you, I guess.
>
> Commonwealth's attorney: Okay, you saw me put them down, didn't you?
>
> Trooper Short: On or about your person.

■■ He argues that the trooper was in effect "testifying" regarding contested issues in the case, such as the definitions of "possession" and "constructive possession," and that his replies to the Commonwealth's attorney improperly bolstered the prosecution's case.

The trial judge has broad discretion in the area of questioning on voir dire. Generally speaking, questions of jurors in criminal cases should be as varied and elaborated as the circumstances require, the purpose being to obtain a fair and impartial jury whose minds are free and clear from all interest, bias or prejudice which might prevent their finding a just and true verdict. Notwithstanding, questions are not competent when their evident purpose is to have jurors indicate in advance or commit themselves to certain ideas and views upon final submission of the case to them.

*Ward v. Commonwealth*, 695 S.W.2d 404, 407 (Ky.1985).

Recently, in *Newcomb v. Commonwealth*, 410 S.W.3d 63 (Ky.2013), the Kentucky Supreme Court analyzed two earlier cases that addressed the proper scope and character of voir dire questioning. In one case, *Ward v. Commonwealth*, 695 S.W.2d 404 (Ky.1985), the defendant's attorney asked jurors to determine that the testimony of a witness for the Commonwealth was less credible because the witness made a deal with the Commonwealth in exchange for testifying. In the other case, *Woodall v. Commonwealth*, 63 S.W.3d 104 (Ky.2001), the defendant tried to commit jurors to either accepting or rejecting the view that his low I.Q. was a mitigating factor. The *Newcomb* Court explained that the questioning in these two cases was improper because it directly implicated the proof that would be put on at trial and asked the jurors to commit in advance to a view that would govern upon final submission of the case. *Newcomb*, 410 S.W.3d at 86–88. By contrast, the questions in this case did not ask the potential jurors to commit in advance to a particular view of the evidence to be presented; rather, the questions related to the legal definition of possession. King does not allege that the prosecutor's questions or the trooper's an-

swers were a misstatement of the law. Moreover, the questions did not ask the potential jurors to commit to a specific opinion regarding the evidence in the case or to apply the definitions to specific evidence in the case.

King's reliance on *Hellard v. Commonwealth,* 829 S.W.2d 427 (Ky.App.1992), *overruled on other grounds by Commonwealth v. Burge,* 947 S.W.2d 805 (Ky.1996), is similarly misplaced. A video store owner who testified that Hellard had made a forged rental agreement had been a member of the same jury pool that was presently hearing her case. As a member of the jury pool, the video store owner had numerous opportunities to meet the other members of the pool. The record showed that the owner had previously sat with at least four of the potential jurors in Hellard's case and had agreed with them on a verdict in that case. "[W]hen a potential juror has a 'close relationship' to any of the parties, counsel, victims, or witnesses, the court should presume the likelihood of bias on the part of the prospective juror." *Hellard,* 829 S.W.2d at 429. The Court concluded that "the possibility of a jury according the testimony of a witness greater weight than it otherwise would have received is just too great when the witness is a member of the same jury pool." *Id.* at 431.

Although the fact that Trooper Short was in uniform may have caused his responses to carry more weight with the other members of the venire, his statements at voir dire were not testimonial, nor was he a witness in the upcoming case. Nor is there any evidence that he had a close relationship of the situational type to any members of the jury pool. *Id.* at 429. If any error did occur in allowing him to answer the prosecutor's questions, it did not rise to the level of manifest injustice required for reversal under the palpable error standard. RCr 10.26.

King's fourth and final argument concerns the closing argument made by his co-defendant's counsel. Adams's trial counsel stated as follows:

> If Sean Adams had been making regular trips down here you would know about that, by this task force. Now, let me remind you, when they were out there at Cottage Hearth Inn, they weren't looking for Sean Adams. They were expecting Jeff King to drive through. They knew about Jeff King.

King's counsel objected, on the grounds that the officer had not testified to these facts, and instead had testified that the day of the arrest was the first time he had seen Jeff King.

Although Officer Parker did not know King or his vehicle before the day of the arrest, Detective Johnson testified that they had received information about King that led them to conduct the surveillance of the Cottage Hearth Inn. "A closing argument . . . is not a vehicle for introducing evidence, but rather a mere summary device whereby counsel may draw reasonable inferences from the evidence and propound their explanations of the evidence and why the evidence supports their respective theories of the case." *Walker v. Commonwealth,* 288 S.W.3d 729, 741 (Ky. 2009) (internal quotation marks and citations omitted).

King's co-defendant's counsel's remarks drew reasonable inferences from the testimony of Detective Johnson. The trial court did not abuse its discretion in overruling the objection.

The judgment of the Madison Circuit Court is affirmed.

ALL CONCUR.