# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: OCTOBER 29, 2020
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

### 2019-SC-0344-MR

MICHAEL R. P'SIMER                                                    APPELLANT


ON APPEAL FROM CARTER CIRCUIT COURT
V.               HONORABLE REBECCA PHILLIPS, JUDGE
NO. 17-CR-00226


COMMONWEALTH OF KENTUCKY                              APPELLEES


## MEMORANDUM OPINION OF THE COURT

## AFFIRMING


A Carter Circuit Court jury convicted Michael R. P'Simer, of two counts of trafficking in a controlled substance in the first degree (second-offense) and possession of marijuana. The trial court sentenced Mr. P'Simer to thirty years' imprisonment. He now appeals as a matter of right.[1]

On appeal, P'Simer alleges two errors. First, he argues that the trial court erred in denying his motion for a directed verdict of acquittal on each first-degree trafficking charge. Second, he claims that palpable error resulted

---

[1] Ky. Const. § 110(2)(b) ("Appeals from a judgment of the Circuit Court imposing a sentence of ... imprisonment for twenty years or more shall be taken directly to the Supreme Court.").

from the introduction of certain testimony. Following a review of the record and applicable law, we affirm.

## I.     BACKGROUND

On April 5th, 2017, Kentucky State Police Trooper Shane Goodall, (Trp. Goodall), conducted a stop of Mr. P'Simer's vehicle. During the stop, Tpr. Goodall asked P'Simer to exit the vehicle. As P'Simer complied with this request, Tpr. Goodall noticed P'Simer attempt to slide an object under the driver's seat. Upon further inspection, Tpr. Goodall observed that the object was a small, camouflage package with a clear plastic baggie containing white powder visible through an opening in the end of the pack.

Tpr. Goodall seized the package. Within the package, he found two bags containing powdery substances and one bag containing a substance suspected to be marijuana. P'Simer insisted that he did not know the substances were in the vehicle because he had just purchased the car earlier that day. Forensic testing revealed that one baggie contained 3.945 grams of methamphetamine and the other contained 4.607 grams of fentanyl.[2]

Soon thereafter, P'Simer was indicted on one count of trafficking in a controlled substance of more than two grams of methamphetamine in the first degree, second offense; one count of trafficking in a controlled substance greater than two grams of fentanyl, second offense; and one count of possession of marijuana. At trial, Tpr. Goodall testified that, based on his

---

[2] Lab testing was not performed on the bag containing suspected marijuana.

experience, the quantity of drugs found in P'Simer's vehicle was inconsistent with personal use, considering the typical dosage unit and approximate street value of the substances.

The jury convicted P'Simer on all charges. The jury found each trafficking offense to be a second offense and fixed P'Simer's sentence for each trafficking conviction at 15 years' imprisonment, set to run consecutively.[3] The trial court imposed the sentences recommended by the jury for all convictions.

## II. ANALYSIS

### A. The trial court did not err in denying P'Simer's motion for a directed verdict on each trafficking charge.

P'Simer alleges that the trial court improperly denied his motion for a directed verdict on each count of trafficking in a controlled substance. This issue is properly preserved for our review.

We review a trial court's ruling on a motion for directed verdict for abuse of discretion.[4] In considering a defendant's motion for a directed verdict, the reviewing court "must consider the evidence as a whole, presume the Commonwealth's proof is true, draw all reasonable inferences in favor of the Commonwealth, and leave questions of weight and credibility to the jury."[5]

---

[3] P'Simer was also sentenced to 45 days' imprisonment, for the possession of marijuana charge. This sentence is set to run concurrent with his other sentences.

[4] The standard for abuse of discretion is whether the court acted in a manner that was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

[5] *Acosta v. Commonwealth*, 391 S.W.3d 809 (Ky. 2013) (citing *Commonwealth v. Benham*, 816 S.W.2d 186, 187-188 (Ky. 1991)).

Only if the Commonwealth has produced no more than a mere scintilla of evidence is directed verdict appropriate.[6] On appellate review, we must determine whether "it would be clearly unreasonable for the jury to find guilt."[7]

Under KRS[8] 218A.1412(1)(b), a person commits "trafficking in a controlled substance in the first degree when he or she knowingly and unlawfully traffics in: … [t]wo grams or more of methamphetamine." Under subsection (1)(d) a person is guilty of first-degree trafficking if he or she knowingly traffics in "any quantity of fentanyl." A person "traffics" a controlled substance when he or she "means to manufacture, distribute, dispense, sell, transfer, or possess with intent to manufacture, distribute, dispense, or sell a controlled substance."[9]

P'Simer argues that the prosecution failed to introduce sufficient evidence that he intended to sell either the methamphetamine or the fentanyl. He points to the relatively low quantity of drugs and the absence of any indicia of commercial activity (e.g. no scales, pre-packaged bags of drugs, cash, or ledgers). As such, P'Simer contends that the jury lacked sufficient grounds to find him guilty of trafficking. We disagree.

Here, evidence showed that P'Simer possessed nearly 4 grams of methamphetamine and over 4 grams of fentanyl. Moreover, Tpr. Goodall

---

[6] *Id.*

[7] *Benham*, 816 S.W.2d at 187 (citing *Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky. 1983)).

[8] Kentucky Revised Statute.

[9] KRS 218A.010(56).

testified that, in his experience, the typical user of methamphetamine and fentanyl purchases and uses around one-tenth of a gram at a time. He noted that individuals who buy in grams often do so for the purpose of dividing that amount into smaller quantities for purposes of reselling them. Tpr. Goodall approximated the typical street value of one-tenth on a gram of either methamphetamine or fentanyl as between twenty and twenty-five dollars, depending of the potency of the substances, demand, and the individual dealer. Finally, Tpr. Goodall opined that the presence of three different drugs at one time suggests an intent to traffic because, in his experience, many users picked a single drug as their drug of choice.

Viewing the foregoing evidence in the light most favorable to the Commonwealth, we conclude that the Commonwealth presented sufficient evidence to overcome the motion for directed verdict. A reasonable jury could infer that P'Simer possessed the methamphetamine and fentanyl with the intent to distribute it. The Commonwealth presented evidence that P'Simer possessed an amount of both methamphetamine and fentanyl worth over $1,500 and sufficient for dozens of uses of each substance by the typical user. While possession of this quantity does not qualify as intent to traffic *per se*, it raises a significant enough inference for a jury to be allowed to decide the issue. Therefore, we hold that the trial court did not abuse its discretion in denying the motion for directed verdict.

## B. The admission of Trooper Goodall's testimony was not palpable error.

P'Simer contends that the trial court erred in allowing Trooper Goodall to offer improper opinion testimony related to the defendant's specific state of mind.

P'Simer's counsel did not object to this testimony during trial. On appeal, P'Simer requests palpable error review. We review for palpable error pursuant to RCr[10] 10.26. An unpreserved error may only be reversed on appeal if the error is both "palpable" and "manifest injustice resulted from the error."[11] An error is "palpable" when it is "easily perceptible, plain, obvious, and readily noticeable."[12] For an error to bring about manifest injustice, the error must be "so fundamental as to threaten a defendant's entitlement to due process of law."[13] In sum, a palpable error threatens the integrity of the judicial process.[14]

P'Simer specifically alleges that two instances of Tpr. Goodall's testimony improperly opined about P'Simer's mens rea. First, Tpr. Goodall stated that the amount of drugs found in P'Simer's car was an amount that individuals often purchase to break up and resell. Next, he stated that the quantity of drugs he recovered from Mr. P'Simer's vehicle was consistent with the amount of drugs he typically observes in the possession of traffickers.

---

[10] Kentucky Rule of Criminal Procedure.

[11] RCr 10.26.

[12] *Young v. Commonwealth*, 426 S.W.3d 577, 584 (Ky. 2014) (citing *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006)).

[13] *Id.* (citing *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky.2006)).

[14] *Martin*, 207 S.W.3d at 5.

Neither of the aforementioned statements are inadmissible under Kentucky law. As such the introduction of the statements was not erroneous at all, let alone palpable error. Numerous decisions of this court permit law enforcement officers to opine that the quantity of drugs recovered in a given case was inconsistent with personal use.[15] This Court's decision in *McGuire* proves relevant to the case at hand. There, a law enforcement officer testified that the presence of multiple bags of drugs suggested an intent to traffic and that 2.623 grams of methamphetamine was inconsistent with personal use.[16] This Court held that such testimony was not improper opinion testimony because it did not speak to the ultimate issue of guilt.[17] Here, Tpr. Goodall offered substantially similar testimony; he opined that the quantity of drugs recovered from P'Simer was inconsistent with personal use. Therefore, we hold that the testimony was not inadmissible, and no error resulted from its inclusion.

### III.   CONCLUSION

For the foregoing reasons, we affirm the judgment.

All sitting. All concur.

---

[15] *See e.g. McGuire v. Commonwealth*, 595 S.W.3d 90, 94-95 (Ky. 2019) (holding that officer's testimony that evidence recovered was consistent with trafficking and not personal use was admissible); *Sargent v. Commonwealth*, 813 S.W.2d 801 (Ky. 1991)(holding that officer's opinion testimony that quantity of marijuana and unique packaging suggested an intent to traffic was admissible).

[16] *McGuire*, 595 S.W.3d at 93.

[17] *Id.* at 94-95.

COUNSEL FOR APPELLANT:

Brandon Neil Jewell
Department of Public Advocacy

COUNSEL FOR APPELLEES:

Daniel Jay Cameron
Attorney General

Stephanie L. McKeehan
Assistant Attorney General