RENDERED: APRIL 16, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0800-MR

KAREN L. BRADFORD                                      APPELLANT

                    APPEAL FROM UNION CIRCUIT COURT
v.                HONORABLE BRANDI H. ROGERS, JUDGE
                    ACTION NO. 16-CI-00174

JEFFREY S. BRADFORD                                APPELLEE

OPINION
REVERSING IN PART, VACATING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: DIXON, KRAMER, AND MCNEILL, JUDGES.

DIXON, JUDGE: Karen Bradford appeals from the Findings of Fact, Conclusions of Law, and Decree of Dissolution of Marriage entered May 20, 2020, by the Union Circuit Court. After careful review of the record, briefs, and law, we reverse in part, vacate in part, and remand for further proceedings consistent with this Opinion.

**FACTS AND PROCEDURAL BACKGROUND**

The parties were married on May 26, 1989, and have one child, who is now an adult. The parties separated in 2015, and Jeffrey Bradford petitioned for a dissolution in 2016. Ultimately, the parties were able to resolve all but four issues: allocation of the retirement accounts, disposition of the marital home, maintenance, and attorney fees. At the final hearing, the court heard testimony from a certified public accountant (CPA), as well as the parties.

The CPA testified that he had determined the present value of the parties' respective defined benefit pension plans earned during the marriage. From her 29-year career as a public school teacher, Karen's Teacher Retirement System (TRS) pension was valued at $1,094,393. Jeff's pension from Rayloc was valued at $145,385. In addition to their pensions, both parties had additional retirement accounts. Karen testified to 401(k) and 457(b) accounts totaling $14,000. The court found, based on Jeff's pretrial disclosures, that he had two 401(k) accounts valued at $260,491.85.

Regarding the marital home, the parties purchased the property in 1994, but the original home was lost to fire in 2007. After the fire, the parties relocated to a duplex, where Jeff currently resides, while pursuing reconstruction. Karen testified to many delays and stresses related to the reconstruction process, which she attributed to Jeff. As of the date of trial, Karen was residing in the

home, but construction was still not complete. The house in its current condition was appraised at $258,000 and was encumbered by a $50,000 mortgage. Karen requested she be granted the residence and that Jeff's share of the equity—which she would pay by mortgaging the property—be offset, at least in part, by the estimated $73,134 needed to complete the house to her specifications.

Karen testified regarding her present circumstances in support of her requests for maintenance and attorney fees. Karen indicated that she retired in 2018 due to the physical and mental toll she had endured from a thirteen-year cycle of pain. She cited a litany of life stressors and testified that she had been diagnosed with post-traumatic stress disorder and battered woman syndrome. As a result, Karen asserts she cannot sleep, has nightmares, wakes up in night sweats, gets dizzy, has panic attacks, and endures pain so fierce it induces vomiting. Karen testified these factors prohibit her from working full-time even if she desired to do so, which she does not.

Karen receives approximately $3,000 monthly from her pension and approximately $900 net pay from her part-time employment with a local school where she works a flexible schedule, averaging between 12 and 14 hours per week. Karen testified her estimated monthly expenses total $5,900.99, exclusive of any mortgage she would be required to obtain to compensate Jeff for his portion of the equity in the marital home. Karen acknowledges that she pays for many things for

her adult son and granddaughter, who have resided with her intermittently, but indicated her stated expenses were for her exclusively. On cross-examination, Karen admitted, however, that her food budget included the cost of feeding her son and granddaughter up to six times per week.

After a hearing, the court entered its judgment granting Karen the marital home; ordering her to pay Jeff $104,000, his half of the marital equity; classifying the retirement accounts as marital property; ordering each party to retain their own retirement benefits; and denying Karen's requests for maintenance and attorney fees. This appeal timely followed.

## ANALYSIS

Karen argues the court erred in: (1) its apportionment of the parties' retirement accounts, (2) denying her request for maintenance, and (3) denying her motion for attorney fees. We will address each argument in turn and will introduce additional facts as necessary.

## APPORTIONMENT OF RETIREMENT ACCOUNTS

Karen argues the court erred when it failed to take into consideration that her TRS pension is in lieu of Social Security benefits[1] and in support cites to *Shown v. Shown*, 479 S.W.3d 611 (Ky. App. 2015). Karen concedes that she did

---

[1] Pursuant to Kentucky Revised Statutes (KRS) 61.410 *et seq.*, Kentucky teachers are excluded from Social Security benefits.

not preserve the issue but requests review for palpable error pursuant to CR 61.02.[2]

To be palpable, an error "must be easily perceptible, plain, obvious and readily

noticeable." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. App. 2006).[3]

By virtue of KRS 161.700(3), a TRS pension "shall not be classified

as marital property . . . except to the extent permitted under KRS 403.190(4)."

Where one spouse has a TRS pension and the other has a retirement plan governed

by ERISA,[4] such as the case herein, KRS 403.190(4) instructs that the spouse with

the ERISA plan is entitled to a reciprocal, commensurate exception. However, as a

TRS pension replaces a teacher's Social Security benefits, which by federal law[5]

cannot be divided or assigned, the present value of a TRS pension must first be

reduced by the present value of the Social Security benefits the teacher-spouse

would otherwise be entitled to receive. *Shown*, 479 S.W.3d at 613-14. This

calculation requires expert testimony. *Id.* After proper valuation and offsetting,

the court shall order the disposition of any remaining retirement benefits. *Id*.

Karen is correct that the court did not follow the dictates of *Shown*

and, furthermore, the judgment did not cite or apply KRS 403.190(4). As a result,

---

[2] Kentucky Rules of Civil Procedure.

[3] While the *Brewer* Court was applying CR 10.26 and not CR 61.02, as the rules contain identical language, we find no reason the same analysis would not apply herein.

[4] Employees Retirement Income Security Act of 1974, 29 U.S.C.A. § 1003(b), 1055, 1144.

[5] 42 U.S.C.A. § 407.

the court erroneously concluded that the entirety of the parties' retirement benefits was marital property. This is clear error by the court. However, Karen is only entitled to relief if the error resulted in manifest injustice. *Brewer*, 206 S.W.3d at 349. Manifest injustice requires that the appellant either demonstrate a probability of a different result or an error which "seriously affected the fairness, integrity, or public reputation of the proceeding." *Jones v. Bailey*, 576 S.W.3d 128, 145 (Ky. 2019) (quoting *Young v. Commonwealth*, 426 S.W.3d 577, 584 (Ky. 2014)).

Given the significant disparity between the value of the parties' retirement accounts, which were awarded in Karen's favor, Jeff is correct that there is a reduced probability that the court's erroneous classification of these assets resulted in actual harm to Karen. However, given the complex nature of the computations—which exceeds the bounds of judicial notice, the import of the issue on a societal level, and the fact that the court's error pervaded its analysis on the remaining issues—we conclude a manifest injustice has occurred. Accordingly, we reverse and remand. On remand, the court must conduct a new evidentiary hearing which comports with the dictates of *Shown*.

**DENIAL OF MAINTENANCE**

Based upon our decision to reverse the court's disposition of the retirement accounts, the court's decision on maintenance is necessarily vacated. *See McVicker v. McVicker*, 461 S.W.3d 404, 421 (Ky. App. 2015). However, as

the same issue may arise on remand, in the interest of judicial economy we will address Karen's argument. Karen asserts the court erred in denying her maintenance where she demonstrated a $2,000 shortfall between her expenses and her income and she has insufficient property. We agree.

A court may grant spousal maintenance if the spouse seeking maintenance lacks sufficient property, including apportioned marital property, to provide for his/her reasonable needs and is unable to support oneself through appropriate employment. KRS 403.200. This Court may disturb the judgment on maintenance only where the trial court abuses its discretion or bases its decisions on clearly erroneous findings. *Powell v. Powell*, 107 S.W.3d 222, 224 (Ky. 2003). An abuse of discretion occurs when the court's decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000). A court's findings are clearly erroneous if they are not supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

In denying Karen's motion for maintenance, the court concluded she had sufficient property and could support herself through employment. Relevantly, the court found: Karen's pension has a high value, she receives approximately $3,000 per month from her pension, she is unable to return to full-time employment, she works part-time for approximately 10 to 12 hours per week

making $24.73 per hour, and she currently has no access to her 401(k) or 457(b) accounts due to age restrictions. The court found that the marital home was worth $258,000 with an indebtedness of $50,000, which was assigned to Karen, resulting in $104,000 of equity to each spouse. The court noted that with the award of her retirement accounts and the home, Karen was receiving 70% of the marital assets. Regarding her ability to meet her needs, the court found that Karen's claimed expenses of $5,900.99 were "somewhat overstated," as they included the cost for others who resided in the home, her son could help defray the cost of the home, and Karen could sell the marital home and relocate to a more affordable property, if necessary. Additionally, the court noted Karen had received an inheritance from her father's estate.

The court's findings are supported by the record with two exceptions: (1) the son could help with housing costs, and (2) the proportions of the marital property each party was allocated, as detailed in our analysis above. As the court largely sustained Karen's claimed expenses and did not find that her employment was inappropriate, for the court's decision to be sound Karen would need adequate property to meet her substantial budgetary shortfall. The court's reliance on the retirement plans is flawed where it found the high valuation of the TRS pension—which Karen can only access through the monthly payments already factored into her income—and where it found she cannot presently access

her 401(k) or 457(b) accounts. Additionally, the court failed to consider that Karen's expenses do not include the cost of the second mortgage she would be required to obtain by the judgment, serving only to increase her budgetary shortfall, or otherwise consider whether her share of the equity from the sale of the marital house would fully meet her reasonable housing needs given her standard of living throughout the marriage. Likewise, the record does not demonstrate whether the inheritance from her father, for which the court made no finding as to the amount, is available for her continued care.

On remand, after property issues are resolved, it will be necessary to re-evaluate the issue of Karen's entitlement to maintenance.

## DENIAL OF ATTORNEY FEES

"The court from time to time *after considering the financial resources* of both parties may order a party to pay a reasonable amount for [attorney fees]." KRS 403.220 (emphasis added). As this matter is being remanded for reconsideration of the parties' property and financial resources, we vacate this portion of the judgement for reconsideration pursuant to the foregoing determinations.

## CONCLUSION

Therefore, and for the foregoing reasons, we REVERSE IN PART and VACATE IN PART the Findings of Fact, Conclusions of Law, and Decree of

Dissolution of Marriage of the Union Circuit Court, and REMAND for further proceedings in accordance with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Steven R. Dowell
Owensboro, Kentucky

BRIEF FOR APPELLEE:

J. Christopher Hopgood
Henderson, Kentucky