RENDERED: JULY 7, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0625-MR

DONALD HOSKINS                                                                           APPELLANT

v.
APPEAL FROM TRIMBLE CIRCUIT COURT
HONORABLE JERRY D. CROSBY, II, JUDGE
ACTION NO. 19-CR-00032

COMMONWEALTH OF KENTUCKY                                                        APPELLEE

<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE: CALDWELL, COMBS, AND KAREM, JUDGES.

COMBS, JUDGE: In this criminal case, the Appellant, Donald Hoskins (Hoskins),

appeals his conviction of two counts of sexual abuse in the first degree and his

sentence of 15-years' imprisonment.

Hoskins was indicted for three counts of first-degree sexual abuse of a

victim under 12 years of age. In 2009, Hoskins's longtime friend, Jeana, was

divorced and needed a place to stay. Hoskins allowed Jeana; her two sons; and her

then ten-year-old daughter, H.L., to move in with him. Jeana and her three

children lived with Hoskins from January 2009 until April 2010. After they moved out, Jeana remarried. Her husband, Mickey Gonterman, is a Kentucky State Police (KSP) Trooper.

Some ten years later, in 2019, H.L. disclosed to her mother, Jeana, that Hoskins had sexually assaulted her on three occasions beginning in January 2009. The next day, March 30, 2019, Jeana confronted Hoskins about the allegations, which he denied. Later that day, Hoskins texted Jeana's husband, Mickey. The two men met in a school parking lot to talk.

Mickey was in his personal vehicle and recorded the conversation on his cell phone. In that recording, Hoskins admitted to being drunk and thought that maybe his penis fell out of his boxer shorts when he reached over to get the television remote from H.L. Ultimately, Hoskins admitted having put H.L.'s hand on his penis -- once. Hoskins did not think that it could have happened more than twice or three times "at the most." Hoskins knew that it was wrong. Hoskins and Mickey met again in the parking lot on April 1, 2019, and that conversation was also recorded. Hoskins said he thought that it happened "at the most three" times. Both recordings were played for the jury.

On April 3, 2019, Jeana and Mickey met with Hoskins in the parking lot. That conversation was also recorded and was played for the jury. Hoskins said that the first time was inadvertent -- that he was reaching for the television

-2-

remote while in his underwear. Hoskins admitted to putting H.L.'s hand on his penis twice. That day, Hoskins sent Mickey a text message apologizing to H.L. and Jeana. That message was shown and was also read to the jury during Mickey's testimony.

KSP Detective Dave Roberts investigated the case. Detective Roberts conducted a recorded interview of Hoskins in which he admitted that he made H.L. touch his penis. That audio recording was also played for the jury.

At the conclusion of the Commonwealth's case, Hoskins's attorney advised that Hoskins would testify. The trial court asked Hoskins if he understood his right to remain silent. Hoskins affirmed that he did but that he had made the decision to testify after consulting with his attorney. The Commonwealth stated that it believed Hoskins could open the door to what the court had redacted from the recorded statements.[1] However, the trial court did not agree that it would allow the Commonwealth to ask questions concerning evidence of other crimes. The trial court took a break so that defense counsel could speak with Hoskins.

The parties reconvened in chambers about 14 minutes later. The court said it wanted to make sure of the status. The court stated that if Hoskins took the

---

[1] By Orders entered January 24, 2022, the trial court noted that the Commonwealth had not made a motion pursuant to Kentucky Rules of Evidence (KRE) 404(b) for introduction of prior bad acts or uncharged acts. The trial court excluded/redacted any references in the recorded statements to allegations regarding uncharged acts of oral sodomy and to victim impact evidence.

stand, he would potentially open the door "for a lot of stuff to come in that was not coming in." The court explained that it was "still reluctant to give the Commonwealth leeway" to ask about uncharged acts, but that "if the defendant puts his character into play, the Commonwealth's cross-examination can go down a lot of different ways." Defense counsel stated he had tried to explain it to his client. The trial court stated as follows:

> the best I can do to advise you to and create a level playing field for everybody, but please understand the Commonwealth does get to cross and if your character is put into question the Commonwealth does get to into different areas that they may not have explored before.

The court again allowed defense counsel time to discuss the matter with Hoskins.

Approximately 12 minutes later, defense counsel advised the court that after further consideration, Hoskins had decided not to testify. The trial court reiterated that if the defendant put his good character in issue, the Commonwealth would have the right to rebut that with evidence of bad character.

The jury convicted Hoskins of two counts of first-degree sexual abuse, victim under 12, and acquitted him of the third count. He was sentenced to 15-years' imprisonment.

In his appeal, Hoskins argues that the trial court "improperly coerced him" into relinquishing his right to testify. The "denial of a defendant's right to testify on his or her own behalf is a constitutional 'trial-type' error that is amenable

-4-

to the harmless error analysis . . . ." *Quarels v. Commonwealth*, 142 S.W.3d 73, 82

(Ky. 2004). Hoskins concedes that the issue was not preserved[2] and requests

palpable error review under Kentucky Rule of Criminal Procedure (RCr) 10.26.[3]

> For an error to be palpable, it must be easily perceptible,
> plain, obvious and readily noticeable. A palpable error
> must involve prejudice more egregious than that
> occurring in reversible error[.] A palpable error must be
> so grave in nature that if it were uncorrected, it would
> seriously affect the fairness of the proceedings. Thus,
> what a palpable error analysis boils down to is whether
> the reviewing court believes there is a substantial
> possibility that the result in the case would have been
> different without the error. If not, the error cannot be
> palpable.

*Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006) (internal quotation

marks, footnotes, and citations omitted).

Hoskins contends that the trial court incorrectly warned him that if he

testified, "it could open the door to all kinds of things that the court ha[d]

previously excluded from trial." Hoskins explains that the "only things the court

had previously excluded" were in its orders regarding the recorded conversations

---

[2] As our Supreme Court explained in *Martin v. Commonwealth*, 207 S.W.3d 1, 5 (Ky. 2006), the concepts of palpable error and harmless error are distinct. "A claim of palpable error presupposes a lack of preservation . . . . Harmless error, on the other hand, presupposes preservation . . . ." *Id.*

[3] In relevant part RCr 10.26 provides that "[a] palpable error which affects the substantial rights of a party may be considered . . . by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error."

as noted above. Hoskins contends that his testimony could not have opened the door to admission of hearsay allegations of uncharged offenses or victim impact evidence "as these type[s] of evidence are inadmissible regardless of whether the defendant testified." Hoskins also claims that instead of preserving the issue, defense counsel "joined in coercing the defendant into not testifying[.]"

Hoskins relies upon *Woolfolk v. Commonwealth*, 339 S.W.3d 411, 418 (Ky. 2011), which holds that "the trial court's inaccurate warning to a criminal defendant that a perjury charge is a likely consequence of his election to testify, when in fact it is not, is always error." Hoskins also draws our attention to an unpublished decision of this Court, *Doe v. Ramey*, No. 2018-CA-001154-DG, 2020 WL 1898418, at *8 (Ky. App. Apr. 17, 2020), for the proposition that "[a] waiver of [the defendant's] right to present his own testimony as evidence could not be knowingly, voluntarily, and intelligently made where he was given inaccurate advice by the district court." We have reviewed these cases, and we conclude that they are distinguishable from the case before us and offer no basis for us to reverse in this case.

There is no evidence to support Hoskins's claim that he was coerced by the trial court. Nor is there any error. As the Commonwealth observes, the trial court cautioned Hoskins about the "possibility" of the admissibility of rebuttal character evidence -- if he opened the door. "The prosecutor may introduce

evidence of the accused's bad character only to rebut evidence of the accused's good character[.]" *Metcalf v. Commonwealth*, 158 S.W.3d 740, 745 (Ky. 2005).

Even were we to assume, *arguendo*, that the trial court's cautioning Hoskins was error, it would not rise to the level of palpable error. The evidence against Hoskins was overwhelming. The jury heard the recordings. They heard Hoskins admit -- several times -- that he put H.L.'s hand on his penis. We do not believe that "there is a substantial possibility that the result in the case would have been different without the error." *Brewer*, *supra* (internal quotation marks omitted).

Accordingly, we affirm.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Michael L. Goodwin
Rob Eggert
Louisville, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Melissa A. Pile
Assistant Attorney General
Frankfort, Kentucky