# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: JUNE 17, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0728-MR

JAMES T. HINMAN, II          APPELLANT

V.
        ON APPEAL FROM CHRISTIAN CIRCUIT COURT
HONORABLE ANDREW SELF, JUDGE
NO. 17-CR-00355

COMMONWEALTH OF KENTUCKY        APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

On retrial, a Christian County jury found Appellant James T. Hinman, II, guilty of three counts of first-degree rape, one count involving serious physical injury to the victim. The trial court sentenced Hinman to life in prison. He brings four claims of error on appeal. He claims the trial court improperly allowed a nurse to testify to a doctor's notes; the trial court erred by not granting a directed verdict on the third rape charge; palpable error occurred when testimony prohibited by Kentucky Revised Statute (KRS) 532.055(2)(a) was entered into evidence; and palpable error occurred when a probation officer did not fully inform the jury about probation eligibility in relation to the sex offender treatment program (SOTP) requirements. Upon review, we affirm the Christian Circuit Court's judgment.

# FACTUAL AND PROCEDURAL BACKGROUND

This is Hinman's second appeal to this Court. After a prior reversal, he was found guilty again for his actions in March 2013. The underlying facts of his case, presented in our 2016 opinion (*Hinman I*), follow.

> Appellant and his wife, Lily,[1] married in the fall of 2012. Almost immediately, the relationship began to deteriorate. According to Lily's trial testimony, Appellant became angry on March 12, 2013 after she rejected his sexual advances. He warned Lily that he would teach her to never to reject him again and, for the next two hours, he repeatedly struck her about the face and head with his fists and kicked her legs and torso. At one point, he jumped onto her chest with all his weight. He then removed her clothing, commented on the battered condition of her body, and resumed kicking and hitting her until she passed out. He roused her back to consciousness by shaking her and resumed beating her.

> After the attack, according to Lily's testimony, Appellant demanded her assurance that she would not again reject his sexual advances. He then forced Lily to wear a dress belonging to her daughter.[2] He began fondling her and calling her by her daughter's name as he looked at a photograph of her daughter. He then initiated vaginal intercourse to which Lily acceded out of fear that she would again be beaten, or even killed.

> The next evening, March 13, Appellant told Lily he would not physically hurt her again but that he was not finished punishing her. He took Lily, dressed only in pajamas, outside in freezing

[1] Lily is a pseudonym. Ordinarily, we have used pseudonyms only to protect the anonymity of juveniles. Appellant's wife is not a juvenile but in his brief to this Court, he used this pseudonym and the Commonwealth continued to do so in its brief. We continue the use of this pseudonym to be consistent with the parties' arguments.

[2] Lily's daughter lived with the daughter's father. Lily had two sons living with her and Appellant.

[During Hinman's second trial, he testified the blue dress was a costume "Cinderella dress" belonging to Lily, not her daughter, and that he was the one who wore it during sex. The Commonwealth introduced photographic evidence of Lily's daughter wearing the dress to her biological father's wedding.]

2

weather where he placed a dog collar around her neck and ordered her into the doghouse. He left her there for about an hour before he returned, allowing her into the residence only after she agreed to his demand to do everything her "master" told her to do.[3] When back in the house, Appellant forced her to lick his feet and fellate him. After that, Appellant forced Lily to commit acts of anal sodomy on him, and then he subjected her to vaginal and oral intercourse repeatedly through the night.

The next morning, March 14, Lily was unable to walk. She was dizzy, sore, and bleeding from her vagina. She testified that later that evening, Appellant again made sexual advances and they had vaginal intercourse. She testified that she had no desire for intercourse, but she did not refuse him because she "wanted to stay alive" and escape with her children when she could.

On the morning of March 15, Lily devised a plan to get away from the house with her children. After escaping, she reported the preceding events to law enforcement authorities and had a CT scan and a rape examination performed. As a result of the assault, she sustained a concussion and severe bruising about her head and body. She suffered from headaches, dizziness, and pain for several weeks.

*Hinman v. Commonwealth*, 2014-SC-000474-MR, 2016 WL 1068421, at *1-2

(Ky. Mar. 17, 2016).

Hinman was found guilty of second-degree assault and first-degree rape, serious physical injury, by a Christian County jury in 2014. *See id.* at *1.[4] The trial court followed the jury's recommendation and sentenced him to serve ten years in prison for the assault and forty years in prison for the rape, the sentences to be served concurrently. *See id.* Hinman successfully appealed

---

[3] Lily testified that she could have escaped when she was left outside but she did not do so out of fear for her sons who remained in the house with Appellant.

[4] Hinman was indicted for first-degree rape, first-degree sodomy, second-degree assault, first-degree unlawful imprisonment, and first-degree criminal abuse. The jury acquitted him of sodomy, unlawful imprisonment, and criminal abuse. *Id.* at *2.

3

his rape conviction to this Court where the conviction was reversed because Hinman's right to a unanimous verdict was violated. *Id.* at *3. Specifically, the trial evidence reflected at least three instances during the March 12-15, 2013 timespan that supported a conviction for first-degree rape, but the jury instruction did not direct the jury to consider any of the specific instances of alleged rape and it did not provide a verdict form that would clearly indicate unanimity based upon the same criminal act. *Id.* On remand, Hinman was indicted on three counts of first-degree rape, one involving serious physical injury. After a trial on these charges, the jury returned a guilty verdict on all three counts and recommended a sentence of life for first-degree rape, serious physical injury, and twenty years for each of the other counts, all to run consecutively. The trial court followed the jury's recommendation except Hinman was sentenced to serve the three sentences concurrently for a total of life in prison.

The parties agree that the jury heard substantially the same evidence discussed in *Hinman I.* This included testimony from the victim, investigating officers, and the nurse who treated Lily at the emergency room. The Commonwealth also introduced Lily's smashed cell phone, Lily's daughter's dress that Hinman forced Lily to wear while he raped her, photos of Lily's injuries, Lily's medical records (including testimony on the rape kit that evidenced Hinman's semen), and Hinman's police interview. The jury heard that when Hinman was detained and interviewed by the police, he denied that he had beaten or sexually assaulted his wife, claiming her bruises were a result

4

of her falling out of bed and hitting a nightstand, and that he and his wife had wild but consensual sex. During trial, Hinman testified to a series of events different from Lily's testimony and from what Hinman originally told the detective. Hinman testified that he was transgender and identified as a lesbian. He admitted beating Lily "half to death" but claimed that she verbally provoked him. He also testified that he beat Lily March 9-10, not March 12. He denied raping Lily on the evening of March 14 but claimed he and Lily had consensual sex on the evening of March 12 and the evening of March 13 only.

On appeal Hinman claims the trial court erred by 1) improperly allowing a nurse to testify to a doctor's notes; 2) not granting a directed verdict on the third rape charge; 3) allowing the Commonwealth to introduce improper criminal history evidence during the penalty phase; and 4) allowing the Commonwealth to introduce misinformation about the SOTP during the penalty phase.

## ANALYSIS

### I. The Trial Court Did Not Err by Allowing a Nurse to Read the Emergency Room Doctor's Clinical Impression Notes

The registered nurse who assisted in Lily's care with the emergency room doctor on March 15, 2013 testified for the Commonwealth. The nurse agreed that she was present in the emergency room when Lily was brought in to be examined and evaluated for her injuries—sexual assault, physical injuries.

Defense counsel did not object to this testimony but objected when the nurse was asked to read parts of the doctor's notes. The trial court allowed the testimony. The jury heard that the doctor noted Lily had bruising of the face, back, right arm, left arm, right hip, right lower leg, and left lower leg and in terms of the doctor's clinical impressions, he listed closed head injury, concussion, multiple contusions, and alleged physical and sexual assault.[5]

Hinman claims his right to confront the witness was violated and because he was unable to confront the doctor directly about his clinical impression, the doctor's notes unfairly vouched for Lily's testimony regarding her injuries. Hinman complains that the nurse's reading of the doctor's notes was prejudicial because the doctor's clinical impression notation of "alleged physical and sexual assault" is the same as the doctor testifying he believed the victim was telling the truth, the type of testimony *Hoff v. Commonwealth*, 394 S.W.3d 368, 376 (Ky. 2011), proscribes as improper bolstering.

Hinman cites *Little v. Commonwealth*, 422 S.W.3d 238, 245-46 (Ky. 2013), and the authority it relies upon to argue the doctor's clinical impression, particularly the statement of "alleged physical and sexual assault" was testimonial and he should have been allowed to confront the doctor. Like *Whittle v. Commonwealth*, 352 S.W.3d 898 (Ky. 2011) (forensic lab report found to be testimonial), *Little* particularly relies upon *Melendez-Diaz v.*

---

[5] The nurse's notes entered into evidence contained similar information. As the presenting complaint, the nurse's notes read in part, "Patient . . . reports repeated physical and sexual ass[a]ult [for] 3 days."

*Massachusetts*, 557 U.S. 305 (2009) (finding affidavits reporting the results of forensic analysis of seized material were testimonial and noting, *id.* at 312, n.2, medical reports created for treatment purposes, would not be testimonial under its decision), and *Bullcoming v. New Mexico*, 564 U.S. 647 (2011) (finding blood alcohol concentration report testimonial and noting State did not claim that the report was necessary to provide medical treatment). These post-*Crawford v. Washington*, 541 U.S. 36 (2004), decisions distinguish between testimonial medical records and records intended for medical treatment. However, unlike *Whittle*, *Little* concluded the hospital lab report at issue was not testimonial. 422 S.W.3d at 246. *Little* explains, if the primary purpose of the medical record at issue was not to establish or prove a fact or serve as a "substitute for trial testimony," the admissibility of the content of the medical record is governed by the Kentucky Rules of Evidence (KRE), and not by the Confrontation Clause. *Id.*

Lily went to the hospital for treatment of her injuries where an assessment of her injuries allegedly resulting from physical and sexual assault was necessary. The form used, the "Emergency Physician Record," contains the kind of information relevant to an emergency physician treating a patient with the complaint of sexual and physical assault, including information about the complaint, symptoms, past medical history, and the physical exam. The

7

doctor's "Clinical Impression" is the last major section of that Emergency Physician Record.[6]

Because Hinman admitted assaulting Lily, the question before this Court is whether the emergency room doctor's clinical impression statement, "alleged sexual assault," was testimonial. To assess whether the Confrontation Clause was violated, we must determine whether the content of the doctor's clinical impression arose from the doctor's primary purpose of promoting treatment or for proving a fact necessary for Hinman's conviction, *i.e.*, that Hinman sexually assaulted Lily. "In making the primary purpose determination, standard rules of hearsay . . . will be relevant." *Michigan v. Bryant,* 562 U.S. 344, 358-59 (2011). As applied to medical treatment, KRE 803(4) explains that "[s]tatements made for purposes of medical treatment or diagnosis and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to treatment or diagnosis" may ordinarily be admitted at trial despite their hearsay status.

This Court has previously recognized that a doctor's testimony and report containing the rape victim's assertion that she had been vaginally raped repeatedly over eight years was admissible under KRE 803(4) because it was reasonably pertinent to diagnosis and treatment, describing the cause or

---

[6] The "Physician Documentation," also a part of the medical records, contained a disposition summary with "Impression: Closed Head Injury, Concussion, Multiple Contusions, Alleged Adult Physical Abuse, Alleged Adult Sexual Abuse."

8

external source of her injury. *Hoff*, 394 S.W.3d at 372. As in *Hoff,* it is fair to say that a statement about alleged recent physical and sexual assault was relevant to the injuries reported and that is the type of statement a doctor may rely on when treating or diagnosing a patient. Although Hinman claims that the doctor's notes were testimonial, he has not shed light on how the doctor's clinical impression, using the term "alleged" and reflecting Lily's assertion that she was sexually assaulted, had a primary purpose of use at trial rather than diagnosis and treatment. We conclude Hinman's Sixth Amendment right was not violated.

Nevertheless, even if the nurse's reading of the doctor's notes was somehow error under the Confrontation Clause, it was harmless error under Kentucky Rule of Criminal Procedure (RCr) 9.24 and the constitutional "harmless beyond a reasonable doubt" standard. Under the constitutional standard, we judge whether the "error [is] unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record." *Yates v. Evatt,* 500 U.S. 391, 403 (1991). When doing so, we consider such factors as "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Delaware v. Van Arsdall,* 475 U.S. 673, 684 (1986) (citations omitted).

9

The doctor's notes from Lily's medical records were certified and properly admitted into evidence prior to the nurse's testimony, with no objection from Hinman. He does not now challenge the admission of the notes. Reading of the notes was cumulative to the medical records already entered in evidence. The nurse testified to her own observation of Lily's bruising. Hinman did not cross-examine the nurse about the doctor's or her notes reporting Lily's allegations of physical and sexual assault. He cross-examined the nurse about the pelvic examination notes for which "no trauma seen" was documented for the vulva, introitus, vagina, and cervix. He elicited from the nurse that "no trauma seen" was the doctor's note. Hinman also elicited that according to the medical records Lily had a CT scan of her head on March 15 and March 20, 2013, and the results of both scans were normal.

Other proof included numerous photographs, Hinman's admission that he had beaten Lily prior to the occurrence of the sexual encounters, Lily's testimony, the investigating detectives' testimony, and the March 15 rape kit evidencing Hinman's semen. Consequently, if the nurse's reading of the doctor's notes was error, it was an "error unimportant in relation to everything else the jury considered on the issue" of Hinman physically and sexually assaulting Lily. *Yates*, 500 U.S. at 403.

Hinman further argues that the doctor's notes improperly bolstered both Lily's testimony and the nurse's testimony, which he claims also vouched for Lily's testimony that she was sexually assaulted. "The rule against bolstering or vouching addresses attempts by one witness to express belief in the

10

credence of another witness." *Ruiz v. Commonwealth*, 471 S.W.3d 675, 683 (Ky. 2015).

As noted above, *Hoff*, a child sexual abuse case, recognized that in order to make a proper diagnosis, a doctor is required to consider the facts as given in the history along with any physical evidence. 394 S.W.3d at 375-76. However, in *Hoff*, the doctor's statement included language supportive of believing the victim and the doctor also included the statement that he could say with reasonable medical probability that the victim's description of what happened to her was the true cause of her injuries. *Id.* at 376. Unlike in *Hoff*, the doctor's or the nurse's notes here that Lily suffered an alleged physical and sexual assault does not indicate that the doctor or the nurse believed Lily's allegations. Instead, use of the terms "alleged" and descriptions of what the "patient reports," simply suggests that Lily made the claim she was assaulted, not that the assault had been confirmed or proven and that the doctor believed Lily's stated reason for coming to the emergency room. Under these circumstances we cannot find improper bolstering.

### II. The Trial Court Did Not Err by Denying a Directed Verdict on the "Serious Physical Injury" Allegation

The indictment charged that Hinman raped Lily on or about March 12, on or about March 13, and on or about March 14, 2013. At the close of the Commonwealth's case, Hinman moved for a directed verdict on the first rape charge. He argued that the timeline failed to establish he raped Lily on March 12 since she testified that the rape occurred during the early hours of March

11

13.[7] The trial court denied the motion, finding the Commonwealth presented evidence of three distinct instances of alleged rape, the dates being established by the testimony. Hinman again moved for a directed verdict at the close of evidence but this time he argued the evidence did not support the jury finding that he physically assaulted Lily on March 12, 13, or 14 because he testified to beating Lily days before then. The trial court denied the motion. Hinman now claims the trial court erred by not granting a directed verdict on the third charge, that being a rape on or about March 14, 2013. He argues that Lily's trial testimony did not present evidence that she had vaginal intercourse on the evening of March 14.

Recently, *Ray v. Commonwealth*, 611 S.W.3d 250 (Ky. 2020), clarified the procedure for preserving for appeal an alleged directed verdict issue. A defendant must:

> (1) move for a directed verdict at the close of the Commonwealth's evidence; (2) renew the same directed verdict motion at the close of all the evidence, unless the defendant does not present any evidence; and identify the particular charge the Commonwealth failed to prove, and must identify the particular elements of that charge the Commonwealth failed to prove. Criminal defendants may move for directed verdict on one count of a multiple count indictment without rendering the alleged error unpreserved; defendants are not required to move for directed verdict on any lesser included offenses to a particular charge in order to preserve the issue; and, nor are they required to object to instructing the

---

[7] Defense counsel explained this argument to be premised upon *Hinman I*'s discussion of the evidence presenting at least three instances in the March 12-15 time frame that would support a conviction for first-degree rape.

The jury was instructed on first-degree rape, serious physical injury, as to the intercourse Lily testified to in the early morning hours of March 13; first-degree rape as to the intercourse Lily testified to in the early morning hours of March 14; and first-degree rape as to the intercourse Lily testified to in the nighttime hours of March 14.

12

jury on that particular charge to preserve the alleged directed verdict error.

*Id.* at 266.

Hinman's motion for a directed verdict at the close of all the evidence differed from his motion at the close of the Commonwealth's case. He did not renew his initial motion but provided different grounds for a directed verdict, indeed grounds different from that which he now argues. Although Hinman cites preservation of his argument for appellate review based upon the two directed verdict motions decided by the trial court, those two motions were decided on different grounds. Only those particular issues considered by the trial court can be considered properly preserved. *Id.* at 265; *see* Kentucky Rule of Civil Procedure 50.01 ("A motion for a directed verdict shall state the specific grounds therefor.").

Here, Hinman preserved for review whether the evidence was sufficient to prove Lilly suffered "serious physical harm." This particular element determines the felony class upon conviction. If a defendant is convicted for first-degree rape, serious physical injury, the otherwise Class B felony of first-degree rape becomes a Class A felony. KRS 510.040(2).

When reviewing a motion for a directed verdict,

> the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

13

*Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky. 1991).

Although Hinman argues that the evidence was not sufficient to prove Lily suffered a serious physical injury on March 12, 13, or 14, Lily's testimony of the events beginning the evening of March 12 and ending early morning on March 13 was sufficient evidence to support the jury finding that he committed first-degree rape, serious physical injury. The trial court did not err by denying the motion for a directed verdict.[8]

### III. Admission of the Deputy Clerk's Penalty Phase Testimony Which Included Testimony Prohibited by KRS 532.055(2)(a) Does Not Warrant Palpable Error Relief

During the penalty phase, the Commonwealth introduced the testimony of a Christian Circuit Court deputy clerk, who read Hinman's prior criminal history. The history included a reference to two unnamed charges that had been dismissed in a Caldwell County misdemeanor marijuana trafficking case; a Calloway County charge of criminal trespassing that was merged with his misdemeanor conviction for harassing communications; and a conviction in McCracken County for contempt of court which stemmed from charges of failure to yield the right-of-way and failure to wear seatbelts. Hinman points out that the Commonwealth misinformed the jury as to the seatbelt charge as

---

[8] Citing *Campbell v. Commonwealth*, 564 S.W.2d 528, 530 (Ky. 1978) (*overruled by Ray*), the Commonwealth addressed Hinman's third-rape-charge directed verdict argument. The Commonwealth points to Lily's testimony describing the timeline of the three rapes. Even though this directed verdict argument was not properly preserved, we conclude the evidence on the third rape charge was sufficient to survive a directed verdict motion.

the charge was dismissed.  He argues that the admission of this evidence constituted palpable error.

"Kentucky's Truth-in-Sentencing statute is geared toward providing the jury with information relevant to arriving at an appropriate sentence for the particular offender."  *Williams v. Commonwealth,* 810 S.W.2d 511, 513 (Ky. 1991).  KRS 532.055(2)(a) provides that the Commonwealth's evidence at sentencing may include the "minimum parole eligibility, prior convictions of the defendant, both felony and misdemeanor" and the "nature of prior offenses for which he was convicted."  "Nothing in KRS 532.055(2)(a) permits a jury to hear evidence during the penalty phase of prior charges that have been amended–it is only permitted to hear evidence of 'the nature of the prior offenses for which [the defendant] was *convicted.*'"  *Blane v. Commonwealth,* 364 S.W.3d 140, 152 (Ky. 2012) (*abrogated on other grounds by Roe v. Commonwealth,* 493 S.W.3d 814 (Ky. 2015)).  "[I]t is also well settled that the Commonwealth cannot introduce evidence of charges that have been dismissed or set aside."  *Id.* (quoting *Cook v. Commonwealth,* 129 S.W.3d 351, 365 (Ky. 2004)).

Under RCr 10.26, if an error is found to be palpable and if that unpreserved error affects the substantial rights of the defendant, the appellate court may grant appropriate relief if manifest injustice has resulted from the error.  An error is palpable when it is "easily perceptible, plain, obvious and readily noticeable."  *Brewer v. Commonwealth,* 206 S.W.3d 343, 349 (Ky. 2006).  The error must be "so manifest, fundamental and unambiguous that it

15

threatens the integrity of the judicial process." *Martin v. Commonwealth*, 207 S.W.3d 1, 5 (Ky. 2006).

Hinman cites *Stansbury v. Commonwealth*, 454 S.W.3d 293, 304 (Ky. 2015), to support his argument that the improper introduction of his dismissed and amended charges is palpable error. In *Stansbury*, the defendant was convicted of attempted murder, arson in the first-degree, and for being a second-degree persistent felony offender. *Id.* at 297. The Commonwealth admitted during the sentencing phase exhibits on three convictions. *Id.* at 303. Two of the exhibits contained victims' names. *Id.* The third exhibit contained a page showing Stansbury was charged with three counts of wanton endangerment in the first degree, which were all dismissed as part of a plea agreement. *Id.* Because Stansbury's only prior convictions consisted of two counts of third-degree burglary and third-degree criminal mischief and one count each of third-degree assault and third-degree arson, this Court could not say that introduction of the dismissed wanton endangerment charge, which was filed in conjunction with the assault and arson charges, did not have an impact. *Id.* at 305. The Court concluded likewise as to the introduction of the identities of local victims with whom the jurors might have had a connection. *Id.* We do not find *Stansbury* comparable to the instant case.

Here, the Commonwealth properly introduced evidence of six prior convictions, none of which included victim identity. The convictions were second-degree assault in Christian County; trafficking in marijuana in Calloway County; harassing communications in Calloway County; fourth-

16

degree assault, child abuse, in Graves County; second-degree burglary in McCracken County; and contempt in McCracken County. In the face of the current convictions and these prior convictions, the admission of dismissed and merged charges which did not implicate violence–two of which were unidentified charges, one was criminal trespassing, and one was a traffic regulation violation–could have had little sway on the jury.

Furthermore, Hinman testified on his own behalf. While testifying that he had already been convicted for the assault of Lily, was remorseful, and was benefitting from programs while incarcerated, he opened the door for the Commonwealth's impeachment of his statement that he had "never experienced a situation where [he] lost complete control in violence like that before." Hinman denied that he had ever been accused of domestic violence against his ex-wives. The Commonwealth introduced a copy of the emergency protective order against him as a result of domestic violence toward an ex-wife and reminded him that he had been convicted of assaulting a child. Lily also provided a victim impact statement. Although information regarding crimes for which Hinman was not convicted should not have been introduced into evidence, we cannot conclude that this was palpable and so manifest that it threatened the integrity of the judicial process. We cannot say that "there is a 'substantial possibility' that the result in the [penalty phase] would have been different without the error." *Brewer*, 206 S.W.3d at 349.

### IV. The Parole Officer's Testimony Describing Hinman's Parole Eligibility Was Not Palpable Error

A probation and parole officer testified during the penalty phase. She testified as to the minimum and maximum possible sentences Hinman could receive, and his 85% parole eligibility. A bench conference was held after the officer explained that Hinman would be eligible for meritorious good-time credit and if accumulated, with the lowest possible sentence of twenty years, he could be eligible for parole after fifteen or sixteen years. The trial court instructed the parties to clarify that while Hinman could receive good-time credit, he could never reduce his sentence below seventeen years. The officer testified to that effect on cross-examination. The officer further testified that Hinman would be required to complete a SOTP.

KRS 197.045(4) states:

> Any eligible sexual offender, as defined in KRS 197.410, who has not successfully completed the sex offender treatment program as determined by the program director shall not be entitled to the benefit of any credit on his or her sentence. A sexual offender who does not complete the sex offender treatment program for any reason shall serve his or her entire sentence without benefit of sentencing credit, parole, or other form of early release.

Hinman complains that the officer misinformed the jury because testimony was not elicited explaining that if he failed to complete the SOTP, he would not be entitled to any credit on his sentence. He argues that the incomplete information violated his due process rights to have misleading evidence kept out of his penalty trial. Hinman seeks palpable error review on this final claim of error.

18

*Robinson v. Commonwealth*, 181 S.W.3d 30, 38 (Ky. 2005), is a case in which the probation and parole officer provided incorrect information regarding parole eligibility during the sentencing phase. The prosecutor repeated the incorrect information during closing argument. *Id.* Concluding that palpable error occurred, the Court reversed the defendant's sentence, stating:

> The use of incorrect, or false, testimony by the prosecution is a violation of due process when the testimony is material. *Napue v. Illinois*, 360 U.S. 264, 269, 272, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959). This is true irrespective of the good faith or bad faith of the prosecutor. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-1197, 10 L. Ed. 2d 215 (1963). When the prosecution knows or should have known that the testimony is false, the test for materiality is whether "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103, 96 S. Ct. 2392, 2397, 49 L. Ed. 2d 342 (1976).

*Id.*

We fail to see how Hinman's due process rights were violated by the parole officer's testimony regarding the SOTP. As noted previously, KRS 532.055(2)(a) provides that the Commonwealth's evidence during the penalty phase may include the minimum parole eligibility. The Commonwealth presented that evidence. As described above, the parole officer's incorrect parole eligibility testimony was corrected so the jury heard that based on the lowest sentencing option of twenty years, Hinman would not be eligible for parole until he served seventeen years in prison. The minimum parole *eligibility*, as defined by statute, is not changed by a defendant's refusal to engage in programs from which he earns the benefit of sentence credit. Or stated another way, parole eligibility testimony provides the jury with

19

knowledge of the minimal amount of time a defendant may serve, not a guarantee that a defendant will take advantage of earning sentence credit to reduce the sentence. Here, the fact that a sex offender must complete a SOTP in order to be released after serving only 85% of his sentence was not material to the jury's sentencing decision.

## CONCLUSION

For the foregoing reasons, the Christian Circuit Court's judgment is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Robert Chung-Hua Yang
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Lauren Rachel Lewis
Assistant Attorney General