# IMPORTANT NOTICE

## "NOT TO BE PUBLISHED OPINION"

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED" PURSUANT TO RULE OF APPELLATE PROCEDURE (RAP) 40(D). THIS OPINION SHALL NOT BE CITED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE.

UNDER RAP 41, UNPUBLISHED OPINIONS OF KENTUCKY APPELLATE COURTS RENDERED AFTER JANUARY 1, 2003, THAT ARE FINAL UNDER RAP 40(G), MAY BE CITED BY A PARTY FOR CONSIDERATION BY A COURT IF THERE IS NO PUBLISHED OPINION THAT ADEQUATELY ADDRESSES THE POINT OF LAW BEING ARGUED BY A PARTY.

IF AN UNPUBLISHED OPINION IS CITED FOR CONSIDERATION BY A COURT THE OPINION SHALL BE SET OUT AS AN UNPUBLISHED OPINION IN THE DOCUMENT IN WHICH THE UNPUBLISHED OPINION IS CITED.

RENDERED: JUNE 25, 2026
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0396-MR

GEORGE REIS                                          APPELLANT

V.            ON APPEAL FROM ROWAN CIRCUIT COURT
HONORABLE ELIZABETH H. DAVIS, JUDGE
NO. 22-CR-00193

COMMONWEALTH OF KENTUCKY                APPELLEE

**MEMORANDUM OPINION OF THE COURT**

A jury found Reis guilty of possession of drug paraphernalia, first-degree possession of a controlled substance, two counts of first-degree trafficking in a controlled substance, and being a first-degree persistent felony offender. Reis was sentenced to twenty-five years' imprisonment pursuant to the jury's recommendation.

On appeal, Reis raises the following claims: (1) the trial court committed reversible error when it declined to strike three jurors for cause; (2) a police officer's testimony that Reis had "some active warrants for his arrest" undermined Reis's right to a fair trial; (3) officer Smith's testimony about what others told him undermined Reis's rights to a fair trial and to present his defense; (4) the Commonwealth committed prosecutorial misconduct when it told the jury during closing arguments that Reis "was selling fentanyl and

methamphetamine and other substances, hydrocodone, in your community" after having disavowed that statement during a juror strike argument and presenting no evidence to support it; and (5) the errors in this case amount to cumulative and reversible error. Reis asks this Court to reverse his convictions and remand his case to the trial court for a new trial. We decline to do so, and we affirm.

## I.    Background

On May 18, 2022, Rebecca Reis and George Reis were in a white Cadillac in a Dairy Queen parking lot. Rebecca and Reis are married. The Morehead Police Department received a call reporting this white Cadillac because it appeared the passengers were involved in an altercation and were possibly impaired. Officer Smith with the Morehead Police Department responded to this call. While in the Dairy Queen parking lot, Officer Smith observed the Cadillac sitting at the exit of the parking lot with the passenger door open. However, the Cadillac erratically pulled back into the Dairy Queen parking lot. At this time, Officer Smith made a traffic stop both regarding the erratic driving and to conduct a welfare check. Rebecca was driving, and Reis was a passenger in the vehicle at the time. Officer Smith noticed tension between Rebecca and Reis. Rebecca was unable to give Officer Smith her identification; however, she provided him with either a social security number or driver's license number. This number did not come back as registered to Rebecca. On his way back to the vehicle, Officer Smith observed Rebecca and Reis leaning forward in the vehicle as though they were putting something under the seats.

2

Rebecca and Reis informed Officer Smith that they were leaning forward to look for their identifications.

At this point, Sergeant Thomas and Patrolman Adams arrived at the scene. Officer Smith had an interaction with Rebecca, and she began mouthing something to him. Officer Smith asked Rebecca to exit the vehicle to conduct a sobriety test and to verify what Rebecca was trying to tell him. Rebecca told Officer Smith that "the dope isn't mine." Rebecca then informed Officer Smith that the altercation between herself and Reis was regarding missing drugs that Reis accused Rebecca of having. Officer Smith conducted a field sobriety test on Rebecca, and she admitted that she had used methamphetamine and heroin. Officer Smith arrested Rebecca, and she told him that there was a large amount of drugs in the vehicle that belonged to Reis. Rebecca was also found with drugs on her. Reis was then removed from the vehicle. When officers ran Reis's identification, they found active warrants for his arrest. After a search of the vehicle, they found a large amount of drugs: approximately 75 ½ gabapentin pills, 17 ½ hydrocodone pills, 14 ½ morphine pills, and baggies of white powder substances, crystalline substances, and a green leafy substance. The granular substances were sent to the Kentucky State Police forensic laboratory and were identified as over 100 grams of a mixture of fentanyl, cocaine, and tramadol. Additionally, approximately 50 grams of methamphetamine was identified. Officers also found three scales, three glass pipes, plastic straws, and several cell phones. Reis' wallet was recovered in the parking lot with nearly $3,000 cash in it.

3

In October 2022, Reis was indicted by a grand jury for first-degree trafficking in a controlled substance (ten or more dosage units of hydrocodone), first offense; possession of drug paraphernalia; first-degree trafficking in a controlled substance (fentanyl), first offense; aggravated trafficking in a controlled substance (fentanyl); and being a first-degree persistent-felony offender. Later, a superseding indictment was returned, and it added the count of aggravated trafficking based on the quantity of fentanyl exceeding 28 grams. The indictment was also amended to revise Count Three to trafficking in methamphetamine.

Reis' trial began on June 17, 2024. Before his trial, Reis wrote a letter claiming ownership of the drugs and all other evidence found in the vehicle. This letter was read to the jury. His defense was that he was in possession of the drugs solely for personal use. He testified that he had been in a severe car accident and that the pain medication prescribed by doctors did not work. Reis alleged that he purchased the drugs to manage his pain.

Reis was convicted of first-degree possession of a controlled substance, possession of drug paraphernalia, two counts of first-degree trafficking in a controlled substance, and being a first-degree persistent felony offender. The trial court sentenced him to twenty-five years' imprisonment pursuant to the jury's recommendations. Reis now appeals as a matter of right. KY. CONST. § 110(2)(b).

## II.    Analysis

4

On appeal, Reis raises the following claims: (1) the trial court committed reversible error when it declined to strike three jurors for cause; (2) a police officer's testimony that Reis had "some active warrants for his arrest" undermined Reis' right to a fair trial; (3) officer Smith's testimony about what others told him undermined Reis' right to a fair trial and to present his defense; (4) the Commonwealth committed prosecutorial misconduct when it told the jury during closing arguments that Reis "was selling fentanyl and methamphetamine and other substances, hydrocodone, in your community" after disavowing that statement during a juror strike argument and presenting no evidence to support it; and (5) the errors in this case amount to cumulative and reversible error.

## A. The trial court did not commit reversible error when it declined to strike Juror 3032, Juror 2904, and Juror 2900 for cause.

Reis alleges that the trial court committed reversible error when it did not strike Juror 3034, Juror 2904, and Juror 2900 for cause. We will first address whether this issue was preserved for appeal.

In *Floyd v. Neal*, this Court held that

> to preserve the error that a trial court failed to strike a juror for cause a litigant must: (1) move to strike the juror for cause and be denied; (2) exercise a peremptory strike on said juror, and show the use of that peremptory strike on the strike sheet, and exhaust all other peremptory strikes; (3) clearly indicate by writing on her strike sheet the jurors she would have used a peremptory strike on, had she not been forced to use a peremptory on the juror complained of for cause; (4) *designate the same number of would-be peremptory strikes as the number of jurors complained of for cause*; (5) the would-be peremptory strikes must be made known to the court prior to the jury being empaneled; and (6) the juror identified on the litigant's strike sheet must ultimately sit on the jury.

5

590 S.W.3d 245, 252 (Ky. 2019) (emphasis added). Here, Reis' peremptory strike sheet listed five jurors with "(lost strike for cause)" listed next to them: Juror 3034, Juror 2904, Juror 2900, Juror 2008, and Juror 2321. In an attempt to comply with *Floyd*'s requirements, Reis' strike sheet further noted that it would have used peremptory strikes on five other jurors had it been granted its previously mentioned strikes for cause. Those jurors were Juror 2032, Juror 2080, Juror 2445, Juror 2621, and Juror 3032. Of those five, three ultimately served on the jury: Juror 2032, Juror 2621, and Juror 3032.

The shortfall in Reis' attempt to preserve this issue is that he never actually moved to strike Juror 2008 or Juror 2321 for cause. Accordingly, instead of providing five jurors that he would have exercised peremptory strikes on, he should have only provided three. Reis acknowledges his failure to comply with the mandates of *Floyd* but contends that the issue is nevertheless preserved. He reasons that because three out of the five jurors he identified as jurors that he would have otherwise exercised a peremptory strike on ultimately served on the jury—Juror 2032, Juror 2621, and Juror 3032—the removal of any two jurors from that list of five would still result in at least one of the jurors from that list ultimately serving on the jury. But this argument ignores our holding in *Floyd* "that the number of jurors a litigant identifies on her strike sheet must be the same number of jurors the litigant originally moved to strike for cause[,]" and that "[f]ailure to abide by this rule will render the error unpreserved." *Id.* at 251.

6

*Floyd* emphasized that "[t]he purpose of identifying additional peremptory strikes in the first place is to identify jurors a litigant would have **struck had [he] not been forced to use them on a juror [he] believed should have been struck for cause."** *Id.* We further explained that when a party identifies a greater number of would-be peremptory strikes than the number of jurors it requested to strike for cause, it is, in essence, requesting a greater number of peremptory strikes than it is entitled to. *Id.* (citing CR[1] 47.03(1); RCr 9.40(1)). This, in turn, can result in an unfair advantage to that party by raising the probability that one of the jurors it identified will ultimately serve on the jury, thereby enhancing the possibility of reversal on appeal. As Reis failed to satisfy this requirement, we conclude this issue was not properly preserved.

In the alternative, Reis requests palpable error review,[2] alleging that the trial court erred when it declined to strike Juror 3034, Juror 2904, and Juror 2900 for cause.

> For an error to be palpable, it must be "easily perceptible, plain, obvious and readily noticeable." A palpable error "must involve prejudice more egregious than that occurring in reversible error." A palpable error must be so grave in nature that if it were uncorrected, it would seriously affect the fairness of the proceedings. Thus, what a palpable error analysis "boils down to" is whether the reviewing court believes there is a "substantial possibility" that the result in the case would have been different without the error. If not, the error cannot be palpable.

---

[1] Kentucky Rules of Civil Procedure.

[2] Kentucky Rules of Criminal Procedure (RCr) 10.26.

*Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006) (internal citations omitted).

"In determining whether to strike a juror for cause, the trial court must evaluate the totality of the venireman's responses and demeanor." *Kays v. Commonwealth*, 505 S.W.3d 260, 268 (Ky. 2016) (citing *Adkins v. Commonwealth*, 96 S.W.3d 779 (Ky. 2003)). "Impartiality is not a technical conception . . . but a state of mind." *Id.* (citing *United States v. Wood*, 299 U.S. 123 (1936); *Pennington v. Commonwealth*, 316 S.W.2d 221 (Ky. 1958)). "A prospective juror who 'cannot render a fair and impartial verdict on the evidence . . . shall be excused as not qualified.'" *Id.* (citing RCr 9.36(1)). "So long as the trial court 'had a sound legal basis' for the ruling, it will stand." *Id.* (citing *Shane v. Commonwealth*, 243 S.W.3d 336, 338 (Ky. 2007)). "The true test of whether a juror should be stricken for cause is whether . . . 'the prospective juror can conform his views to the requirements of the law and render a fair and impartial verdict.'" *Id.* (quoting *Thompson v. Commonwealth*, 147 S.W.3d 22, 51 (Ky. 2004) (quoting *Mabe v. Commonwealth*, 884 S.W.2d 668, 671 (Ky. 1994))). Furthermore, "the mere fact that a prospective juror has been the victim of a crime similar to the crime being tried does not by itself imply a disqualifying bias." *Brown v. Commonwealth*, 313 S.W.3d 577, 598 (Ky. 2010). "Additional bias is required." *Id.* (citing *Woodall v. Commonwealth*, 63 S.W.3d 104 (Ky. 2001); *Hodge v. Commonwealth*, 17 S.W.3d 824 (Ky. 2000); *Sanders v. Commonwealth*, 801 S.W.2d 665 (Ky. 1990)). "Obvious factors bearing on the likelihood of the bias are the similarity between the crimes, the

8

length of time since the prospective juror's experience, and the degree of trauma the prospective juror suffered." *Id.* We will review each claim separately for Juror 3034, Juror 2904, and Juror 2900.

### 1. Juror 3034

Reis contends that the trial court erred when it declined to strike Juror 3034 for cause. We disagree. *Voir dire* began with the Commonwealth asking whether anyone had family members who had been affected by addiction. Juror 3034 informed the parties that her sister fatally overdosed on fentanyl six years ago. Initially, Juror 3034 stated that her sister's death would cause issues in her ability to listen to evidence in a case regarding drugs. Juror 3034 then approached the bench for further questioning. When asked if she could listen to evidence and remain impartial, Juror 3034 stated: "I could listen, and I can be civil about it, but . . . it's hard to listen to." Juror 3034 stated she has post-traumatic stress disorder resulting from her sister's death.

Based on the foregoing, Reis moved to strike Juror 3034, arguing that there were reasonable grounds to believe that she could not be impartial. At this point, the trial court did not dismiss Juror 3034 because there was no indication that she would not be impartial, but the parties were permitted to further question Juror 3034 on whether she could remain impartial. Juror 3034 stated that her triggers were all related to her sister due to her sister's prolonged drug addiction and informed the trial court that her post-traumatic stress disorder would not be triggered by listening to evidence involving drugs. She stated: "I will give it my best shot to be fair." When asked whether Juror

9

3034 has a strong response when drugs are mentioned, she stated: "I just pray for them." Reis renewed the strike for cause objection; however, the trial court denied this because Juror 3034 stated that she could be fair.

"[W]here questions about the impartiality of a juror cannot be resolved with certainty, or in marginal cases, the questionable juror should be excused." *Futrell v. Commonwealth*, 471 S.W.3d 258, 273 (Ky. 2015). Here, the question of whether Juror 3034 could remain impartial was resolved with certainty. The trial court allowed the parties to extensively question Juror 3034 on whether she could remain impartial. *See id.* ("Where the juror's responses and the rest of the circumstances have created a genuine doubt as to the juror's impartiality, further questioning meant to resolve the doubt by eliciting further information is certainly appropriate[.]"). Juror 3034 affirmed that she could listen to the evidence and remain "civil about it." Furthermore, she stated that merely listening to evidence of drugs will not trigger her post-traumatic stress disorder. Considering the totality of Juror 3034's responses and demeanor, the trial court did not find it necessary to strike her because she believed she could remain impartial and fair. The record supports the trial court's finding. Furthermore, in consideration of the factors, we hold that six years since the death of Juror 3034's sister is a sufficient passage of time to support a finding that this juror could still participate impartially. Moreover, although Juror 3034 indicated that she had post-traumatic stress disorder, she informed the trial court that this would not be triggered by listening to the evidence. Accordingly, we do not find palpable error as to the trial court's ruling.

10

## 2. Juror 2904

Reis further contends that the trial court erred when it declined to strike Juror 2904 for cause. We disagree. Reis' counsel asked the venire panel whether they had a family member, good friend, or close acquaintance who had passed away due to drug use. Juror 2904 stated that his best friend passed away a year and a half ago due to drug use. He also indicated that another person passed away two years ago due to drug use. It is unclear who this person was in relation to Juror 2904 because of the record's audio. Juror 2904 stated that as long as the named deceased individuals were not tied to Reis, he could listen to the facts presented. Reis moved to strike Juror 2904 because at the time of *voir dire*, it was unclear whether Reis would be connected to the deceased individuals. Reis was concerned with the timeline of when these individuals passed and when Reis was allegedly trafficking drugs. However, the Commonwealth informed the trial court that these individuals would not be mentioned in this case. Ultimately, the trial court concluded that Juror 2904 did not definitively state he would be unable to remain fair and impartial. Therefore, there was no cause to strike him.

The trial court considered the fact that Juror 2904 had a relationship with two individuals who passed from drug use. Juror 2904 indicated that he could listen to the facts, and he did not express any concern about his ability to remain fair and impartial. The only evidence that could potentially render Juror 2904 partial is a demonstrated connection between Reis and the two individuals who passed. The Commonwealth clarified that there would not be

11

presentation of evidence showing such a connection. Accordingly, the trial court reasonably concluded that an overlap in the timeline does not establish a sufficient connection between Reis and the two deceased individuals. Considering the totality of Juror 2904's responses and demeanor, the trial court did not find it necessary to strike him. The record supports the trial court's finding. Furthermore, in consideration of the factors, we hold that there was a sufficient passage of time to support a finding that this juror could still participate impartially in light of the circumstances. Juror 2904 did not provide the trial court with reason to believe that his trauma was to a degree that he could not be impartial. Accordingly, we do not find palpable error, and we again decline to disrupt the ruling of the trial court.

### 3. **Juror 2900**

Lastly, Reis contends that the trial court erred when it declined to strike Juror 2900 for cause. We disagree. Juror 2900 stated that her niece's daughter died from drug use four years prior, and that her brother and nephew had to pull the deceased from "drug dens." Juror 2900 stated that she did not have a personal relationship with her great-niece, but she did have a good relationship with her brother and nephew. Juror 2900 stated that her sister-in-law and the sister-in-law's husband spent time in jail for drug trafficking. For this reason, Juror 2900 had custody of her sister-in-law's child while she was incarcerated. When asked if these experiences would affect her ability to be impartial, Juror 2900 stated, "I don't think so." She further stated, "Without hearing the case, I couldn't 100 percent tell you. But I don't think

12

so." When questioned further, Juror 2900 affirmed that she could listen to all of the evidence and make a decision based only on the evidence without involving her personal feelings. Reis moved to strike Juror 2900 for cause; however, the trial court overruled the motion.

Because Juror 2900 affirmed that she could remain impartial and consider all of the evidence, the trial court found that this juror could render a fair and impartial verdict. The record supports the trial court's finding. Furthermore, in consideration of the factors, we hold that four years is a sufficient passage of time to support a finding that this juror could still participate impartially in light of the circumstances. Moreover, Juror 2900 did not provide the trial court with reason to believe that her trauma was to a degree that she could not be impartial. Accordingly, we do not find palpable error, and we again decline to disrupt this ruling.

### B. Trooper Thomas' testimony that Reis had "some active warrants for his arrest" did not undermine Reis' right to a fair trial.

During Reis' trial, the Commonwealth called Trooper Thomas to testify. Trooper Thomas was present at the scene. The Commonwealth asked Trooper Thomas whether he recalled having an interaction with Reis and whether he could explain the interaction. Trooper Thomas affirmed that he did, and he explained that he arrived at the scene to assist Officer Smith. Trooper Thomas then testified: "We were able to run his identifying information, and it c[a]me back that he had some active warrants for his arrest."

On appeal, Reis argues that evidence of outstanding warrants was improper under Kentucky Rules of Evidence (KRE) 404(b), which undermined

13

his right to a fair trial. Reis concedes that this issue is not preserved for appeal because Trooper Thomas' testimony was not objected to at trial. Reis requests palpable error review.

Under KRE 401, evidence must be relevant in order to be admissible. *Burdette v. Commonwealth,* 664 S.W.3d 605, 615 (Ky. 2023). "[E]vidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.'" *Id.* If the trial court finds the evidence relevant, it is subject to a KRE 403 balancing test. *Id.* Under KRE 403, evidence is not admissible if its "probative value is substantially outweighed by the danger of undue prejudice." *Id.*

KRE 404(b) provides for the introduction of evidence of extraneous offenses. "Generally, a defendant's prior bad acts are inadmissible because 'ultimate fairness mandates that an accused be tried only for the particular crime for which he is charged.'" *Clark v. Commonwealth,* 223 S.W.3d 90, 96 (Ky. 2007) (citing *O'Bryan v. Commonwealth,* 634 S.W.2d 153, 156 (Ky. 1982)). KRE 404(b) states that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, KRE 404(b) carves out exceptions to this general rule. Under KRE 404(b)(2), evidence of another crime may be admissible "[i]f so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party." We have construed KRE 404(b) as

14

exclusionary in nature, recognizing that the introduction of evidence of prior bad acts "should be 'closely watched and strictly enforced because of the dangerous quality and prejudicial consequences of this kind of evidence.'" *Clark*, 223 S.W.3d at 96 (citing *O'Bryan*, 634 S.W.2d at 156).

Evidence of Reis' outstanding warrant is relevant because it informs the jury of the circumstances leading to Reis' arrest, and exclusion is not warranted under KRE 403. Furthermore, evidence of Reis' outstanding arrest warrants was permissible under KRE 404(b)(2) because it was "so inextricably intertwined with other evidence essential to the case." As a general rule, "a jury cannot be expected to make its decision in a void—without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." *Kerr v. Commonwealth*, 400 S.W.3d 250, 262 (Ky. 2013) ("The existence of the arrest warrants here was necessary to an adequate understanding of the context of the officers' conduct—it provided the setting and context of the events surrounding the officers' surveillance of Kerr's guest room."). Accordingly, "under KRE 404(b)(2), the Commonwealth is allowed to present a complete and unfragmented picture of the circumstances surrounding how the crime was discovered." *Clark*, 267 S.W.3d at 681. Here, evidence of Reis' outstanding arrest warrants provided the setting and context of the events surrounding the officers' search of the vehicle. *Kerr*, 400 S.W.3d at 262. Therefore, there was a sufficient nexus between the Reis' outstanding arrest warrant and the charged crimes under 404(b)(2).

Because we do not find error under 404(b)(2), we accordingly do not find palpable error. Trooper Thomas briefly mentioned that Reis had outstanding warrants. He did not elaborate on what the warrants were for, and the jury heard no other evidence of these warrants. In light of the overwhelming evidence against Reis and his written confession, we cannot conclude that this error was egregious or so grave in nature that it would seriously affect the fairness of the proceedings. *Brewer*, 206 S.W.3d at 349. Therefore, we affirm on this issue.

## C. We decline to reverse Reis' convictions on the basis of inadmissible hearsay.

Reis asks this Court to consider the cumulative harm of the hearsay testimony. "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted." *Harris v. Commonwealth*, 384 S.W.3d 117, 125 (Ky. 2012) (citing KRE 801). Under KRE 802, hearsay is generally not admissible unless an exception exists under KRE 802 or KRE 804. *See id.*

Reis contends that this issue is only preserved in part, as Reis only made two hearsay objections. We will first determine which hearsay issues were reserved for appeal. In order to preserve an issue for appeal, a party must make "a timely objection . . . stating the specific ground of objection, if the specific ground was not apparent from the context[.]" KRE 103. Reis requests palpable error review for the hearsay statements for which no objection was made.

First, Reis alleges Officer Smith's following statements contain inadmissible hearsay:

16

> We had received a complaint of a domestic altercation possibly taking place in a vehicle out on the north end of Morehead at the north end of BP.  So, the complaint c[a]me in, and it was a vehicle described as a white Cadillac.  The call, I believe, stated that people inside the vehicle appeared to be intoxicated.

Reis did not timely object to these statements, nor did he object specifically to these statements.  KRE 103.  Thus, it is not preserved for appeal.

We decline to hold that these statements amounted to palpable error.  First, we hold that Officer Smith's statements were not inadmissible hearsay.  "It is well-established that investigative hearsay is still, fundamentally, hearsay and, thus, disallowed."  *Chestnut v. Commonwealth*, 250 S.W.3d 288, 294 (Ky. 2008) (citing *Sanborn v. Commonwealth*, 754 S.W.2d 534, 541 (Ky. 1988)).  "However, it is equally evident that not all testimony from a police officer concerning an investigation is hearsay."  *Id.*  "The rule is that a police officer may testify about information furnished to him only where it tends to explain the action that was taken by the police officer as a result of this information *and* the taking of that action is an issue in the case."  *Id.*  (citing *Sanborn*, 754 S.W.2d at 541).  "Such testimony is then admissible not for proving the truth of the matter asserted, but to explain why a police officer took certain actions."  *Id.*  (citing *Young v. Commonwealth*, 50 S.W.3d 148, 167 (Ky. 2001)).  This testimony is limited

> to circumstances where the taking of action by the police is an issue in the case and where it tends to explain the action that was taken as a result of the hearsay information.  In such circumstances, hearsay may be admissible to prove why the police acted in a certain manner, but not to prove the facts given to the officer.

17

*Id.* (citing *Gordon v. Commonwealth*, 916 S.W.2d 176, 179 (Ky. 1995)). Here, the evidence is not being offered to prove that there had been an altercation inside the vehicle or that Reis was intoxicated. Rather, it was offered to explain why the officers approached the vehicle on the night of the incident. Therefore, we hold that this was not hearsay. However, even if these statements were inadmissible hearsay, we hold that the evidence that the 911 caller suspected Reis to be under the influence was not palpable error. Reis testified that he struggles with substance abuse, and that he used to use methamphetamine but switched to pain medication and fentanyl. Thus, any evidence of Reis' intoxication does not amount to an error so grave in nature that it seriously affected the fairness of the proceedings. *Brewer*, 206 S.W.3d at 349 (internal citations omitted).

Next, Reis alleges that Officer Smith's following testimony was inadmissible hearsay:

> So, as I start to approach the vehicle again, I noticed both passengers, Mr. Reis in the passenger seat, and the driver were leaned forward kind of like they were trying to put something up under the seats or something like that. As I approached the vehicle, you know, I asked them, "Hey, guys, what are you doing?" And I remember them stating that they were looking for their IDs.

This issue was preserved for appeal because Reis objected to Officer Smith's use of hearsay. KRE 103. The Commonwealth argued that because Rebecca and Reis were co-defendants in the case, all of their statements fall under the hearsay exception to party-opponent. Furthermore, the Commonwealth argued that it was not offered to prove the truth of the matter asserted, but to lay the foundation for why the investigation proceeded. The trial court held that

18

Rebbeca's statements did not fall under the party-opponent exception to hearsay. However, the trial court overruled Reis' objection on the basis that the statements were not offered to prove the truth of the matter asserted but to show why Officer Smith took certain actions. We review a trial court's admission of purported hearsay evidence for abuse of discretion. *Mason v. Commonwealth*, 559 S.W.3d 337, 342 (Ky. 2018).

We hold that this was not inadmissible hearsay because it was not offered to prove the truth of the matter asserted. Officer Smith testified as to this out of court statement to explain his actions during the investigation. This statement was offered not to show that Rebecca and Reis were looking for their identifications, but that they were acting in a way that prompted Officer Smith to investigate further. Therefore, we hold the trial court did not abuse its discretion in overruling Reis's hearsay objection.

Reis further contends that the following statements were inadmissible hearsay:

> I took Ms. Reis over to the side of the Dairy Queen, and what she immediately told me was, you know, that "the dope isn't mine." And I'm like, what? The dope isn't yours? "No, the dope isn't mine." And in this conversation, Ms. Reis stated that the two were arguing over some dope, as she called it, that was missing, that Mr. Reis couldn't find, and he was accusing her of having. This is what she was telling me prior, and what she was trying to mouth to me while I was in the car, was to let me know that the dope in the car wasn't hers. That was what she told me.
>
> . . .
>
> I can't remember what substance was in the small bag that was in her pocket, but it fell out in a search after she placed under arrest. She stated that that's the amount of dope that Mr. Reis was looking for.

19

. . .

> She did tell me that, during that, in the initial conversation, that there was a large amount of dope in the car but that it was not hers, that it was George's and that that is what the argument was over.

. . .

> And when Patrolman Adams and Sergeant Thomas get [George] out of the vehicle, I start to begin my search, and I hear that they tell me that he told them there was dope inside the vehicle as well.

Reis did not timely object to these statements, nor did he object specifically to these statements. KRE 103(a)(1). Thus, this issue was not preserved for appeal.

We decline to hold that the admission of these statements constituted palpable error. Reis wrote a letter claiming ownership of all of the drugs, and his defense was that he possessed the drugs for personal use due to his injury. Because the statements at issue similarly concerned Reis' ownership of the drugs, we conclude that their admission did not result in palpable error.

Lastly, Reis contends that Officer Smith's following statement was improper hearsay:

> So, at that time, he was talking to Sergeant Thomas and Patrolman Adams at that time. They told me that he did make the statement that the dope was in the car. I don't want to testify to that fact that he said it was theirs, because I can't remember for sure. But I do know that he made the comment that it was there.

This issue is preserved for appeal because Reis objected to this statement on the basis of hearsay. KRE 103. The trial court sustained Reis' objection.

20

Further, Reis did not request that the trial court admonish the jury to disregard Officer Smith's hearsay statement. *See West v. Commonwealth*, 780 S.W.2d 600, 601 (Ky. 1989) ("[A]ppellant's objections to such misconduct were sustained, and *upon request*, the jury was admonished to disregard the prosecutor's remarks." (emphasis added)). Therefore, the trial court did not err by failing to *sua sponte* admonish the jury. Thus, there was no error.

## D. The Commonwealth did not commit prosecutorial misconduct.

"Prosecutorial misconduct is 'a prosecutor's improper or illegal act involving an attempt to persuade the jury to wrongly convict a defendant or assess an unjustified punishment.'" *Murphy v. Commonwealth*, 509 S.W.3d 34, 49 (Ky. 2017) (quoting *Commonwealth v. McGorman*, 489 S.W.3d 731, 741–42 (Ky. 2016)). "In considering an allegation of prosecutorial misconduct, the Court must view the allegation in the context of the overall fairness of the trial." *Id.* (citing *McGorman*, 389 S.W. at 742). "To justify reversal, the Commonwealth's misconduct must be 'so serious as to render the entire trial fundamentally unfair.'" *Id.* (quoting *Soto v. Commonwealth*, 139 S.W.3d 827, 873 (Ky. 2004)). "In considering an allegation of prosecutorial misconduct in closing argument, the Court considers the arguments 'as a whole' while remembering that counsel is granted wide latitude during closing argument." *Id.* (quoting *Brewer*, 206 S.W.3d at 350). "The longstanding rule is that counsel may comment on the evidence and make all legitimate inferences that can be reasonably drawn therefrom." *Id.* (quoting *Padgett v. Commonwealth*, 312 S.W.3d 336, 350 (Ky. 2010)).

21

Reis contends that the Commonwealth's statement during closing argument was improper. During *voir dire*, Reis moved the court to strike Juror 2904, who stated that as long as his named deceased individuals were not tied to Reis, he could listen fairly to the facts presented. The Commonwealth clarified that there would not be presentation of evidence showing such a connection. Specifically, the Commonwealth stated: "We're not talking about anyone he sold drugs to. It's possession with intent." During closing argument, Reis alleges that it was improper for the Commonwealth to state: "Mr. Reis was selling fentanyl and methamphetamine and other substances, hydrocodone, in your community." We do not find prosecutorial misconduct. The Commonwealth did not indicate a specific person to whom Reis was trafficking drugs. There was no direct link or connection between Reis and the two deceased individuals connected to Juror 2904. Therefore, we do not find these statements to be "so serious as to render the entire trial fundamentally unfair." *Murphy*, 509 S.W.3d at 49 (quoting *Soto*, 139 S.W.3d at 873)).

Reis further alleges that the Commonwealth did not present any evidence at trial that Reis was selling drugs at or near the time he was arrested. We disagree. There was extensive evidence that the Commonwealth presented, in which the Commonwealth could make a legitimate and reasonable inference that Reis was selling drugs to the community. The jury viewed evidence of the individually bagged narcotics, small plastic baggies, numerous cell phones, scales, and Reis was found with a significant amount of cash. Based on the

22

evidence and review of the closing argument, we hold that the Commonwealth did not commit prosecutorial misconduct.

Furthermore, "[i]f the defendant failed to object . . . the Court 'will reverse only where the misconduct was flagrant and was such as to render the trial fundamentally unfair.'" *Id.* (citing *Ordway v. Commonwealth*, 391 S.W.3d 762, 789 (Ky. 2013)).

Reis concedes that this issue was not preserved for appeal. "Because this issue is unpreserved, we will reverse only if the conduct was both flagrant and constitutes palpable error resulting in manifest injustice." *Barrett v. Commonwealth*, 677 S.W.3d 326, 333–43 (Ky. 2023) (citing RCr 10.26; *Matheney v. Commonwealth*, 191 S.W.3d 599, 606, 607 n.4 (Ky. 2006)).

> To determine whether improper conduct is flagrant and requires reversal, this Court weighs four factors: (1) whether the remarks tended to mislead the jury to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused.

*Id.* at 334 (citing *Brafman v. Commonwealth*, 612 S.W.3d 850, 861 (Ky. 2020)). "We look at the claimed error in context to determine whether, as a whole, the trial was rendered fundamentally unfair." *Id.*

Here, because we hold that there was no prosecutorial misconduct, we also hold that Reis is unable to show that the Commonwealth's conduct was flagrant. Therefore, we affirm on this issue.

23

### E. No cumulative error occurred.

Finally, Reis alleges that each of the issues raised on appeal requires reversal. Specifically, Reis requests reversal due to cumulative error.

Cumulative error is "the doctrine under which multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair." *Brown*, 313 S.W.3d at 631. "We have found cumulative error only where the individual errors were themselves substantial, bordering, at least, on the prejudicial." *Id.* (citing *Funk v. Commonwealth*, 842 S.W.2d 476 (Ky. 1992)). "Where . . . however, none of the errors individually raised any real questions of prejudice, we have declined to hold that the absence of prejudice plus the absence of prejudice somehow adds up to prejudice." *Id.* (citing *Furnish v. Commonwealth*, 95 S.W.3d 34 (Ky. 2002)).

We have found no errors that prejudiced Reis. Therefore, no cumulative error occurred.

### III. Conclusion

Based on the foregoing, we affirm.

All sitting. Lambert, C.J.; Bisig, Conley, Goodwine, Keller, and Nickell, JJ., concur. Thompson, J., concurs in result only.

24

COUNSEL FOR APPELLANT:

Steven J. Buck
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Melissa A. Pile
Assistant Attorney General